## HOURGETTE v. CITY OF GRETNA ET AL.

(November 3, 1931. Opinion and Decree.)

L. H. Gosserand, of New Orleans, attorney for plaintiff, appellee.

Henry P. Viering, of New Orleans, attorney for defendants, appellants.

JANVIER, J. There is in the city of Gretna certain real estate belonging to Hourgette, plaintiff. The improvements thereon having been damaged by fire, he undertook the repair and reconstruction thereof.

Acting under instructions of the "Mayor and Board of Aldermen of the City of Gretna," the police of the said city ordered Hourgette to discontinue the said work for the alleged reason that no building permit had been obtained, and thereupon he brought this proceeding to enjoin the said police and the said officials from interfering with him in reconstructing his property.

A temporary restraining order was issued, a preliminary injunction was granted, and later the matter was tried on its merits, and judgment was rendered permanently enjoining the said police and the said officials from further interfering with the said work.

From that judgment respondents have obtained a devolutive appeal.

We are urged to dismiss this appeal on the ground that the amount involved exceeds our jurisdictional limit. It appears from the evidence that the whole property is worth probably more than $2,000, but the entire value of the property is not here involved. The only amount in dispute is the value of plaintiff's right to

complete the work which he has started, and we are impressed by the fact that that value is less than $2,000.

While the record does not show the present status of the reconstruction work, we are told in the brief of counsel for Hourgette that the building is now completed and occupied and used for the purposes for which it was intended, and we are urged to dismiss the appeal on the ground that no live issue is now presented, since the purpose of the injunction was to protect plaintiff in completing the work, and that, since the reconstruction has now been fully accomplished, our opinion as to whether the injunction should have or should not have been granted will have no effect whatever. Hourgette was within his rights in proceeding with the work pending the trial of this matter on appeal, since respondents, when the injunction was granted, sought neither a suspensive appeal nor the maintenance of the status quo by application to this court or to the Supreme Court for appropriate writs. However, the record itself does not show that the work has been completed, and respondents, in the absence of any showing to that effect, are entitled to the exercise of their constitutional right of appeal.

The officers of the city of Gretna claim that they were justified in attempting, through the police department, to prevent the reconstruction because of the failure of Hourgette, prior to the commencement of operations, to secure a building permit as required by Ordinance No. 150 of the mayor and board of aldermen of the city of Gretna. It is true that that official body had, on May 24, 1920, adopted an ordinance under the terms of which no building could be erected without the prior issuance by the tax collector, on recommendation of the city engineer, of a building permit.

It is also true that, although Hourgette had obtained a permit for the original construction of the building a year or so before, he had not secured one before undertaking the contemplated repairs.

The record shows, however, that no building code or other standard regulations had been adopted to guide either the tax collector or the city engineer in determining whether or not permits should be issued, and that thus in each case these officials were permitted to act each according to his own whim or fancy. What might be approved for one might be rejected for another, and thus an intolerable situation violative of the constitutional rights of citizens might result.

There can be no doubt that the governing authorities of a city may adopt zoning and other building regulations, but, in order to do so, they must fix upon standard plans and specifications, and cannot leave it to their own discretion, or to the discretion of some one appointed or selected, to determine whether, in each individual case, the building to be erected is such as should be permitted. If standard regulations are adopted, then it becomes the engineer's duty not to use his discretion in determining whether any particular building would add to the beauty of the surroundings, or would be safe, or would be sufficiently costly, but his duty is limited to determining whether the plans and specifications comply with the standard regulations. In discussing the question of the constitutionality of city ordinances leaving matters of this kind to the discretion of delegated authorities, commissions, or individuals, the Supreme Court of the United States, in Yick Wo v. Hopkins, 118

U. S. 369, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, said:

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision; and in many cases of mere administration, the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion, or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts bill of rights, the government of the commonwealth 'may be a government of laws and not of men.' For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

In City of New Orleans v. Palmisano, 146 La. 518, 83 So. 789, 790, our Supreme Court dealt with a situation in which the city had prohibited the installation and operation of gasoline supply tanks, etc., without the payment of certain fees and without obtaining a permit from the commission council. The court held the ordinance to be violative of the Fourteenth Amendment of the Constitution of the United States, for the reason that "it does not prescribe any terms or conditions upon compliance with which a permit shall be granted, or without which it shall be withheld." The court further said: "Whether the ordinance was or was not intended to confer, it does in fact confer, upon the commission council, the arbitrary power to grant the permission to one and withhold it from another citizen in a like situation. * *, *"

The same question was discussed in two other cases decided by the Supreme Court of Louisiana: State ex rel. Dickson v. Harrison, 161 La. 218, 108 So. 421, 422, and State v. Carter, 159 La. 121, 105 So. 247. In State v. Carter the court said:

"A statute or an ordinance which, instead of prescribing a uniform rule of action, undertakes to vest in a public officer or commission the authority to discriminate in favor of or against persons engaged in a legitimate business or occupation or enjoying a common right by granting or withholding a license or permit or approval, arbitrarily or according to the officer's or commission's favoritism or whim, is violative of the equal protection clause of the Fourteenth Amendment (referring to the Constitution of the United States). Yick Wo v. Hopkins, Sheriff, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; State v. Mahner, 43 La. Ann. 496, 9 So. 480; State v. Dubarry, 44 La. Ann. 1119, 11 So. 718; State v. Kuntz, 47 La. Ann. 107, 16 So. 651; City of New Orleans v. Palmisano, 146 La. 518, 83 So. 789; City of Shreveport v. Herndon, 159 La. 113, 105 So. 244; 12 A. L. R. 1436."

And in State ex rel. Dickson v. Harrison we find the following language:

"What makes the ordinance objectionable is that it prescribes no uniform rule of

action, applicable to all similarly situated, under which the council is to act in granting or withholding permits, but leaves it to the whim and fancy of the council to grant or withhold them."

That the council, which reserved to itself the right to exercise discretion unbiased by rules or regulations, or that the individuals upon whom such authority may be conferred might attempt to the best of their respective abilities to exercise discretion uniformly and with equal fairness to all, does not cure the defect, or give life to the ordinance. At its passage it was unconstitutional, and, however fairly it might be enforced by any officer or set of officers, life could not be given to it thereby.

But, even if the ordinance on its face did no violence to the constitutional rights of all citizens, the methods followed by the mayor and board of aldermen in this case would have entitled plaintiff to the injunction, because it appears from the testimony of the city engineer himself, on whose recommendations permits were to be issued or refused, that, in this instance, the permit was or would have been refused without any good reason on his part, but solely because he was "instructed by the council, you might say, to ignore issuing any permit whatsoever to Mr. Hourgette until the council authorized me otherwise." His further testimony on this point is as follows:

"Q. It was simply that you were told to refuse it by the council?
"A. Yes, sir.
"Q. And you had no discretion in the matter?
"A. No discretion at all."

For the reasons given, the judgment appealed from is affirmed, at the cost of appellant.