FOURNET, Chief Justice.
 

 This is a proceeding by neighboring residents and property owners
 
 [1]
 
 to enjoin the establishment and operation of a mortuary in Square 2281 in the City of New Orleans, now zoned “B-Residential” and bounded by Elysian Fields Avenue, Pleasure, Frenchmen and Lafreniere Streets, on the ground that the Special Use section of the City Zoning Ordinance, under which a request by the landowner, R. L. Montgomery, was approved, permitting special use of the property for a mortuary,
 
 [2]
 
 is unconstitutional, null and void. Named as defendants are Albert E. Briede & Son, Inc., morticians, and the City of New Orleans. The district judge, after hearing arguments on exceptions of no right or cause of action filed by both defendants, as well as testimony adduced on return of the rule, rendered judgment in favor of defendants, ordering that the rule be discharged and the preliminary injunction denied. On plaintiffs’ application we issued alternative writs of prohibition and mandamus, with a stay order, and ordered the case before us on certiorari, and the matter is now here for consideration.
 

 According to allegations of the petition and information in the record, the basic zoning ordinance of the City of New Orleans prohibits operation of a mortuary in the B-Residential District here involved, and prior to October 20, 1955, authorized “Undertaking establishments” only in F-Commercial and G-Commercial districts, as therein defined; on that date (October 20, 1955) Article XXV of the Zoning Ordinance, known as the “Special Use” section, was amended by Ordinance 495 M.C.S. which added “mortuaries” to the list of establishments as to which the City Council may, by special permit, authorize the location. A public hearing conducted by the City Planning Commission on November 23, 1955, with reference to issuance of the special permit sought by the landowner, resulted in an unfavorable recommendation by the said Commission to the
 
 *41
 
 City Council;
 
 [3]
 
 thereafter the City Council held a public hearing on the subject, following which, on February 2, 1956, by a vote of 5 to 2 with no members absent, it disapproved the report of the City Planning Commission and changed the use classification of the property, as sought in the petition of the landowner.
 

 In denying the application for preliminary writ of injunction the District Judge assigned written reasons in which he observed that a mortuary is not a nuisance per se and under our jurisprudence its construction cannot be enjoined on the speculative averment that it will become a nuisance in fact; he held that “since plaintiffs are not personally discriminated against by the particular application of the ‘Special Use’ section of the City’s Zoning Ordinance involved herein, they are not proper parties to raise issue of its constitutionality,” but found that even if they were proper parties, the provisions of the Section, as applied in this case, satisfy the requirements of due process, are not arbitrary or capricious, and constitute a proper exercise of the city’s police power.
 

 
 *43
 
 “6. Nurseries and truck gardens.
 

 “7. Roadside stands, commercial amusement or recreational developments for temporary or seasonal periods.
 

 “8. Extraction of sand, gravel, shells, top soil and other natural resources.
 

 “9. Parking lots on land not more than three hundred (300) feet from the boundary of any shopping, commercial or industrial district, under such conditions as will protect tbe character of surrounding property.
 

 “10. Drive-in theatres in an F or G Commercial District or in the S-Suburban District.
 

 “11. Filling stations, tourist courts and trailer parks in S-Suburban Districts.
 

 “12. Radio or television broadcasting towers and stations.
 

 “13. Public or other non-profit welfare agencies.”
 

 
 *41
 
 The section of the zoning law (Municipal Ordinance 18,565 C.C.S., adopted July 3, 1953) under attack, Article XXV, is designated “Special Use Regulations,” and provides in pertinent part (as amended) that “The Council of the City of New Orleans may, by special permit and subject to such protective restrictions that are deemed necessary, authorize the location * * * of any of the following buildings or uses * * * in any district from which these are prohibited * * * by this Ordinance: * * * Cemeteries, mausoleums or mortuaries * * * ; ”
 
 [4]
 
 following which list is the declaration that
 
 *43
 
 “Before issuance of any special permit for any of the above buildings or uses, the following conditions shall be complied with * * among these being (a) public hearing before the Planning Commission, following notice and publication in conformity with procedure for hearings on changes and amendments as prescribed elsewhere in the Ordinance, and (b) study and report by the City Planning Commission to the Council, which must be made within 45 days after the public hearing, regarding effect on character of the neighborhood and upon traffic conditions, public utility facilities, and other matters pertaining to the public health, safety, and welfare. Following receipt of such report (and “no action shall be taken upon any application * * * until and unless the report of the City Planning Commission has been filed”), a final yea and nay vote shall be taken on the proposal by the Council in accord with procedure set out elsewhere, but “If the City Planning Commission recommends against the issuance of the special permit, then it may be issued only by an affirmative two-thirds (2/3) vote of the Council.”
 

 The plaintiffs’ charge that the above section is unconstitutional is founded on their contention that it fails to prescribe any uniform rule or standard to guide the City Council, as an administrative agency, in deciding when a particular special permit is to be granted or denied, but, on the contrary, it authorizes the City Council to grant or withhold the permit according to its arbitrary and uncontrolled discretion. In support are cited the cases of State ex rel. Dickson v. Harrison, 161 La. 218, 108 So. 421; City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312; Bultman Mortuary Service, Inc., v. City of New Orleans, 174 La. 360, 140 So. 503; Hourgette v. City of Gretna, 18 La.App. 336, 137 So. 344. They also contend that the “Special Use” section is void because of the equal protection clauses of the Fourteenth Amendment, U. S. Constitution, and Article 1 of the Louisiana Constitution of 1921-LSA.
 

 Counsel for the defendants assert that the District Court’s judgment should be maintained since the ruling that the plaintiffs have not sufficient interest to attack
 
 *45
 
 the 'ordinance on constitutional grounds is “eminently correct,” in view of the fundamental principle of constitutional law that before an individual has such interest he must allege and prove that he personally is injured by the operation of the law; moreover, that equal protection of the laws is ' had when ' all persons similarly situated are affected alike; and that the plaintiffs have not alleged nor attempted to show that the City Council abused its discretion or acted in a hostile, arbitrary or unreasonable manner.
 

 While it is generally true that the constitutionality of a statute or ordinance is open to attack only by a person whose rights are affected thereby, and that such person must show that enforcement of the law would be an infringement of his rights, it is incorrect to say that the plaintiffs fail to qualify in that respect. Unless the “special use” is lawfully, permitted, each plaintiff has a right to have his property retain the. characteristics appropriate to the classification of B-Residential, with uses restricted to those imposed by the ordinance, and, as an adjoining property owner, he has an interest in seeing that the zoning ordinance, in so far as it affects him, is not changed by an illegal process.
 

 In this State, by constitutional provision “All municipalities are authorized to zone their territory; tp. create residential, commercial and industrial districts, 'and to prohibit the establishment of places Of business in residential districts * * * ” Art. 14, Sec. 29, La.Const. of 1921. Zoning measures find their justification in the police power, exerted in the interest of the public. In order to relieve individual owners from unnecessary hardship in the way of strict enforcement, as well as to protect the zoning regulation against attack on the ground of unreasonable interference with private rights, and, at times, 'on the basis of substantial public service and convenience from the -use as well as absence of danger or annoyance to nearby property owners and residents, it is usual for zoning ordinances to provide for zoning boards of appeal, review or adjustment to vary the application of provisions, in accordance with rules therein contained and subject always to appropriate conditions and safeguards. 58 Am.Jur. 1046— 1047, Verbo Zoning, Sec. 196; Annotation, 164 A.L.R. at page 17. In the ordinance under consideration, the procedure to obtain a special permit is initiated by application to the City Planning Commission, whose power is recommendatory or advisory only, its action being subject to approval or reversal by the governing body of the municipality, the City Council. It is recognized, according to McQuillin’s Law of Municipal Corporations, that municipal legislative bodies may reserve to themselves the. power to. grant or deny li
 
 *47
 
 censes or permits,
 
 [5]
 

 "where they do so by an ordinance containing a rule or standard to govern them;
 
 ”
 
 [6]
 
 since it is a fundamental rule,
 
 [7]
 
 fully applicable to zoning ordinances, “that an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation,
 
 administration
 
 or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the
 
 municipal legislative body
 
 or of administrative bodies or officials * * *. A zoning ordinance cannot leave the exercise of property rights to the caprice, whim or esthetic sense of a special group of individuals * *
 
 [8]
 
 (Emphasis in the above, and in following quotations, is supplied.)
 

 The same authority informs us further that “zoning ordinances cannot be varied by municipal or zoning boards or officials unless the law authorizes it. Exceptions can be allowed only in particular situations specified in the zoning ordinance. Furthermore, variances or
 
 administratively granted exceptions cannot be authorised by such bodies or officials except on grounds established by a zoning statute or ordinance;
 
 * * *
 
 the fundamental rule that ungoverned and unbridled discretion cannot be vested in either legislative or administrative bodies or officials, or in
 
 anyone,
 
 is applicable to variances; a uniform rule or standard to govern their grant or denial in dll cases must be established by a zoning
 
 ordinance.”
 
 [9]
 
 “Thus, a zoning ordinance that fails to establish a sufficiently adequate and definite guide to govern officials with respect to grant of variances, exceptions or permits is void. It has been said that varying applications of a zoning ordinance, to be valid, must be so defined and limited that both citizens and the zoning board may know with certainty their rights, privileges and powers under the ordinance. Indeed, unrestricted discretion as to what uses might be made of the properties in a community would not
 
 *49
 
 only be contrary to sound social policy but clearly unconstitutional. * * * ”
 
 [10]
 

 It is clear that the provisions of Article XXV of the Zoning Ordinance of the City of New Orleans fail to meet the above requirements. The record discloses that the Planning Board found as a fact that granting of the special use would have an adverse effect on traffic conditions “with particular emphasis on adjacent minor streets and the Gentilly Boulevard-Elysian Fields Avenue intersection,” as well as that the proposed use was inappropriate, and recommended “That the petition as submitted be denied because of the adverse effects on the character of the neighborhood, traffic conditions, and general welfare as contained in the Analysis” — notwithstanding which the City Council, without assigning any reasons, reversed the Planning Board and authorized the granting of a special permit. While it is true that this was done following a public hearing (as to which there was no requirement), nevertheless such consideration is of no importance in view of the failure of the zoning measure to establish a rule or standard to govern the officials charged with its administration, and to operate with uniformity in all cases. The City Council has been given no “yardstick” to go by and may approve or disapprove a request for a special permit at its whim; and further, by a mere two-thirds vote, unsupported by reasons, the members are empowered to disregard the adverse recommendation of the City Planning Commission. To allow the granting or refusal of special permits by officials without any standard to guide them denies equal protection of the law and is invalid.
 
 [11]
 

 We therefore conclude that Article XXV of the Zoning Law of New Orleans, designated Special Use Regulations, is unconstitutional, null and void. So considered, the City Council is without authority to grant the special use permit for a mortuary in this residential area.
 

 For the reasons assigned the writs are made peremptory; the judgment of the lower court is annulled and set aside and it is now ordered, adjudged and decreed that Article XXV — Special Use Regulations of Municipal Ordinance 18,565 C.C.S., adopted July 3, 1953, as amended, be declared unconstitutional, and that the action of the City Council on Petition No. 46-55 by R. L. Montgomery, granting the request for a special use as a mortuary establishment of Lots 1 through 5 and 19 through 26, Square No. 2281, Third District of New Orleans, be declared null and void; and accordingly, the District
 
 *51
 
 Judge is hereby ordered to issue a preliminary injunction as prayed for and in accordance with law, restraining and prohibiting Albert E. Briede & Son, Inc., from constructing or conducting a mortuary on the said premises; it is further ordered that the case be remanded to the lower court for proceedings on the merits, according to law and consistent with the views herein expressed; all costs of this Court to be borne by respondents, all other costs to await final determination of the matter.
 

 [1]
 

 . The plaintiffs are C. R. McCauley, Joseph Ventola, Paul Bordlce and Victor Vicello.
 

 [2]
 

 . The “Special Use Request” contained the explanation that “The intended mortuary establishment is to be operated by Albert E. Briede & Son, Inc., who are obliged to relinquish the [present] location at 1160 Camp Street to the Mississippi River Bridge Authority and which establishment having to be re-located, has a contract to acquire the particular property shown on the attached plan.”
 

 [3]
 

 . The reasons given by the City Planning Commission in recommending denial of the request were that “Because of the adverse effect on traffic conditions with particular emphasis on adjacent minor streets and the Gentilly Boulevard-Blysian Fields Avenue intersection, together with the inappropriate use of the property in the petition, your advisory Commission recommends denial.”
 

 [4]
 

 . The word “mortuaries” was added in the amendment adopted October 20, 1955, Ordinance No. 495, Mayor Council Series. A complete list of buildings and uses presently designated for special use regulation is as follows:
 

 “1. Any public building erected, or leased and used by any official agency of a Municipal, Parish, State or Federal Gov■ernment.
 

 “2. Hospitals, clinics and institutions, except institutions for criminals; provided, however, that such buildings may occupy not over fifty (50) per cent of the total area of the lot or tract and will not have any serious and depreciating effect upon the value of the surrounding property; and, provided, further, that the buildings shall be set back from all required yard lines heretofore established by this Ordinance, an additional distance of not less than one (1) foot for every foot of building height, over that required in the respective district, and that off-street parking space will be provided.
 

 “3. Airports, landing fields, or landing strips for aircraft.
 

 “4. Cemeteries, mausoleums or mortuaries.
 

 “5. Greenhouses.
 

 [5]
 

 . In the subject Ordinance, the Oity Council has power to grant or deny special permits which effect a change in the use classification of property.
 

 [6]
 

 . 8 McQuillin, Municipal Corporations (3 Ed. 1950) 421, Sec. 25.217; emphasis supplied.
 

 [7]
 

 . See City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312, and authorities there cited to the effect that a statute or ordinance vesting arbitrary discretion in a public official without prescribing fixed and definite rules or specific conditions for the official's guidance is unconstitutional.
 

 [8]
 

 . Id. at 109-110, Sec. 25.62.
 

 [9]
 

 . The distinction at times made between variances and special uses, or permits for special uses under zoning ordinances, i.e., that the former relate to unnecessary hardship and the latter to uses authorized on the basis of substantial public service and convenience from the use, is unimportant in so far as the legal principle under discussion is concerned.
 

 [10]
 

 . Op. cit. supra, note 6, at 287-288, Sec. 25.165; see, tó the same effect, Sec. 25.233.
 

 [11]
 

 . Id. at 419, Sec. 25.216, and cited authorities; also at 454, Sec. 25.241.