156 So.2d 229

**SOUTHERN LAND TITLE CORPORATION et al.**

v.

**CITY OF NEW ORLEANS et al.**

No. 46850.

Oct. 1, 1963.

In re: Southern Land Title Corporation and Ole Square Corporation applying for

1. Article XVII, Sec. 3, p. 35.
2. Article XVIII, Sec. 3, p. 37.

writs of certiorari, prohibition, mandamus and for a stay order.

Writs refused. There appears no error in the judgment complained of.

FOURNET, C. J., thinks a writ should be granted and will assign reasons in support thereof. (See dissent attached.)

HAMLIN, J., is of the opinion that a writ should be granted in order to determine whether the ordinance has or has not been unconstitutionally applied.

SANDERS, J., is of the opinion that writ should be granted.

FOURNET, Chief Justice (dissenting).

I am of the opinion that writs should have been granted. The Board of Zoning Adjustments was clearly without authority hence lacking jurisdiction to grant its order of May 1, 1963, directing Bernard McCloskey, Director of Safety and Permits of the City of New Orleans, to issue a permit to Royal St. Louis, Inc. to construct an additional story of 20′ to the Royal Orleans Hotel, which would then extend its height in excess of 90′. The Comprehensive Zoning Ordinance of the City of New Orleans, Zoning Ordinance No. 18,565, as amended, specifically prohibits any structure, whether residential [1], commercial [2], or industrial [3] to

3. Article XIX, Sec. 3, p. 38.

be more than 50' in height when it is located in the Vieux Carre, or French Quarter, of the City.

The Board of Zoning Adjustments is authorized [4] to make height variances "* * ONLY where there are unusual and practical difficulties or unnecessary hardships in the carrying out of these provisions due to (1) an irregular shape of the lot, (2) topographical, or (3) other physical conditions,

provided such variance will not seriously affect any adjoining property or the general welfare." (Emphasis and numbers added)

There is not a single allegation in the Application for Variation from the Requirements of the Zone Ordinance [5] which was based on a letter [6], nor was there any evidence adduced during the consideration of the matter [7] in support thereof, nor a finding of fact in the order of the Board [8] that

4. Article XXVII, Sec. 4, 3a., p. 55, Comprehensive Zoning Ordinance of the City of New Orleans, Zoning Ordinance No. 18,565 C.C.S., as amended.

5. The application was submitted on April 10, 1963, the announcement of the public hearing appeared in the Times-Picayune on April 12, 1963, the hearing was held April 18, 1963, and the resolution of the Board granting the variance was adopted May 1, 1963.

6. The letter directed to the Board reads as follows:

"Gentlemen:

"Royal St. Louis, Inc., owners of the building at 621 St. Louis Street, occupied by the Royal Orleans Hotel, have requested permission to add an attic story to the existing building. This Mansard roof surmounted by a railing and containing dormer windows will not exceed the height of the similar roof, which surmounted the historic St. Louis Hotel building when it was first built on this site in 1835. We feel that this additional roof will be a distinct improvement in the appearance of the building and its character in the Vieux Carre. The original hotel building, as designed by the architect De Pouilly, was undoubtedly based upon the design of the notable buildings on the rue de Rivoli in Paris. When the present hotel building was erected several years ago a variation in the height was granted, which set the upper cornice at the height of the cornice of

the former hotel building. It is now requested that permission be granted to increase this height by the addition of the Mansard roof which will not, however, increase the overall structure beyond the roof line of the old building, nor will it increase the height above the height of the existing penthouse.

"Sincerely
"(signed)
"Samuel Wilson, Jr."

7. The minutes of the Board reflect that the only evidence heard was that Mrs. Schober, the Executive Secretary of the Board, had been requested to secure the height of the original building from the archives of the Vieux Carre Commission. She had obtained prints from the records of Mr. Wilson which disclosed the proposed Mansard roof will not exceed the height of the St. Louis Hotel built in 1835.

8. The Board adopted a resolution granting the variance for the following reasons:

1. "* * * the effect of the Mansard roof created through the proposed addition will be a distinct improvement in the appearance of the building more in keeping with the area; * * *"

2. The proposed height will not exceed the height of the historic St. Louis Hotel erected in 1835.

3. The proposed addition "* * * will in no manner adversely affect any of the surrounding Quarter property, or in any way injure the Vieux Carre. * * *"

there were "* * * any unusual and practical difficulties or unnecessary hardships * * * due to (1) an irregular shape of the lot, (2) topographical, or (3) other physical conditions * * *". Moreover, there was no finding that the Board was "* * * satisfied that a granting of such variance will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a deviation from the comprehensive plan as established by this Ordinance * * *"[9], which is another prerequisite for granting the variance. (Numbers added)

Thus it is clear the Board acted without power or authority to issue the order in question; and, under all the jurisprudence universally obtaining, it was clearly without jurisdiction to act in the premises, and like a court, its decision is null and void and unenforceable and subject to collateral attack by any one at any time. McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78; Gaudet v. Economical Super Market, Inc., 237 La. 1082, 112 So.2d 720; Hunter v. Hussey, La.App., 90 So.2d 429; Bledsoe v. Erwin, 33 La.Ann. 615; Decuir v. Decuir, 105 La. 481, 29 So. 932; Buillard v. Davis, 185 La. 255, 169 So. 78; Key v. Salley, 218 La. 922, 51 So.2d 390; Tracy v. Dufrene, 240 La. 232, 121 So.2d 843; Mack Trucks, Inc. v. Dixon, La.App., 142 So.2d 606; State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 32 N.W.2d 583; People ex rel. New York Cent. R. Co. v. Limburg, 283 N.Y. 344, 28 N.E.2d 865; Anderson Lumber & Supply Co. v. Fletcher, 228 Ind. 383, 89 N.E.2d 449; In re McLean v. Jephson, 123 N.Y. 142, 25 N.E. 409, 9 L.R.A. 493; 2 Am. Jur.2d, "Administrative Law", sec. 495, p. 303; 73 C.J.S. Public Administrative Bodies and Procedure § 59, pp. 383–384, and § 146, p. 480.

An examination of the record of Long et al. v. City of New Orleans et al., 244 La. 139, 150 So.2d 766 clearly indicates there was error in relying on that case in refusing writs. The issues resolved therein are in no way comparable to the one at bar. In that case the Vieux Carre Commission [10] issued an order permitting the demolition of two buildings bearing the municipal numbers of 234–236 and 238–240 Royal Street. In applying the basic causes upon which the Commission was authorized to act, extensive hearings were held, evidence heard, reports from various experts were considered, and it was shown by all the evidence that one of the buildings had no architectural or historical value, while the other did at one time have some architectural value, but

9. Article XXVII, sec. 4, 3b, p. 55. Comprehensive Zoning Ordinance of the City of New Orleans, Zoning Ordinance No. 18,565 C.C.S., as amended.

10. Its powers and duties are set forth in Article 14, Sec. 22A of the Constitution of Louisiana of 1921, as amended, LSA, and Chapter 65 of the Code of the City of New Orleans.

at that time was (1) in a deplorable condition, (2) the Bienville Street side of the wall was out of plumb by several inches leaning towards the street, (3) the upper walls were also out of plumb leaning in toward Canal Street, (4) the foundations had given away and sunk, (5) the joists had pulled away from the wall and (6) the condition of the building at that time made it unsafe and constituted a hazard. The Commission also found from the evidence that it would have been necessary to build a new foundation and to do so the walls would have to be torn down. Pilasters had been cut away to make larger openings where archways had formerly existed and by so doing the supports of the building had been dangerously weakened. The alterations to the building which occurred from time to time resulted in the loss of its architectural purity. The record further shows that the Commission's architectural committee personally examined the buildings in question, appointed engineers to examine the structures, and after their own inspection and a review of the reports of the engineers recommended the demolition of the buildings.

. This Court, properly, in my opinion refused an application for writs made by the complainants to the trial judge's ruling that after reviewing the above related facts it was within the province of the Vieux Carre Commission to decide whether these buildings should be preserved or demolished, concluding, and correctly so, that " * * * A Court of equity cannot interfere or substitute its judgment for that of an administrative body unless it appears that that body has abused its discretion; i. e., it has arbitrarily and capriciously without regard to the evidence before it, arrived at its conclusion. * * * "

How this ruling of the court in the Long case can be applied to the case at bar is beyond my comprehension for as related hereinabove, there was no allegation in the application for variance, not one iota of evidence heard by the Board of Zoning Adjustments and no finding of fact in its resolution granting the order that there existed any "unusual and practical difficulties or unnecessary hardships * * * due to (1) an irregular shape of the lot, (2) topographical or (3) other physical conditions * * " as required by the Ordinance authorizing the Board to take jurisdiction of the case. (Numbers added)