339 So.2d 1225 (1976)
Sidney E. COOK et al., Plaintiffs-Appellants,
v.
The METROPOLITAN SHREVEPORT BOARD OF APPEALS, et al., Defendants-Appellees.
No. 13037.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1976.
Rehearing Denied December 6, 1976.
Writ Refused February 9, 1977.
*1227 Cook, Clark, Egan, Yancey & King by Sidney E. Cook, Johnston, Thornton & Pringle *1228 by R. Perry Pringle, Hargrove, Guyton, Ramey & Barlow by Ray A. Barlow, Wilkinson, Carmody & Peatross by Charles B. Peatross, Shreveport, for plaintiffs-appellants, Sidney E. Cook, Oliver O. Moore, B. K. Eaves, Dysart E. Holcomb, W. E. McKee, Robert E. Stewart and Simon Silbernagel.
James R. Malsch, Shreveport, for defendants-appellees, The Metropolitan Shreveport Board of Appeals and The City of Shreveport.
Tucker, Martin, Holder, Jeter & Jackson by T. Haller Jackson, Jr., Shreveport, for defendant-appellee, South Central Bell Telephone Co.
Before PRICE, HALL and MARVIN, JJ.
En Banc. Rehearing Denied December 6, 1976.
HALL, Judge.
The appeal in this zoning case is from a judgment of the district court dismissing plaintiffs' suit to set aside action of the Metropolitan Shreveport Board of Appeals and the Shreveport City Council approving South Central Bell Telephone Company's application for a special exception use and variance under the zoning ordinance for construction of a parking area and addition of a second floor to an existing telephone exchange building in a residential area of Shreveport. After due consideration of well articulated multiple objections to the zoning action raised by appellants, and for reasons set forth in this opinion, we affirm the judgment of the district court upholding the action of the municipal authorities.
Specifications of Error
Appellants urge ten specifications of error which, for orderly consideration and discussion in this opinion, are arranged and summarized as follows:
(1) The special exception use provisions of the Shreveport zoning ordinance are unconstitutional as written and as applied in this case.
(2) The approval of the telephone company's application by the Board of Appeals was procedurally defective because:
(a) the Planning Commission did not first approve the application; and
(b) the two alternate members of the Board of Appeals voted on the application along with the five regular members.
(3) The approval of a parking area in connection with the telephone exchange:
(a) constitutes illegal "spot zoning";
(b) is not authorized by the zoning ordinance or by statute; and
(c) constitutes an illegal expansion of a nonconforming use contrary to the zoning ordinance.
(4) The Board of Appeals, the City Council and the trial court erred in:
(a) holding that the telephone company's facility is a "telephone exchange" within the meaning of the zoning ordinance;
(b) holding that the conduct of the telephone company representatives in contacting members of the Board of Appeals and City Council was not prejudicial and did not deprive appellants of a fair hearing; and
(c) holding that the special exception use would not have a detrimental effect on the neighborhood.
Background Facts
The property involved in this suit is located on Line Avenue between Unadilla and Oneonta Streets in South Highlands, a prime residential area of Shreveport. Line Avenue is a heavily traveled thoroughfare running north and south. Unadilla and Oneonta Streets are residential streets running east and west parallel to each other. The property is zoned R-1 one-family residence district. All of the neighboring properties contain nice single-family residences, except the property across Oneonta Street at the southeast corner of Oneonta and Line Avenue on which is located a fire station. Plaintiffs-appellants are homeowners in the neighborhood.
The telephone company constructed a telephone exchange building on property it *1229 owned at the corner of Unadilla and Line Avenue in 1938. The building is an aesthetically attractive one-story masonry building with a highpitched roof. The foundation was constructed to support a second floor. In 1946 and again in 1956, one story additions were made to the building. As originally designed there were off-street parking spaces for seven vehicles. Over the years a need has developed for additional parking accommodations. Employee and company vehicles have been parking on Unadilla Street causing some traffic congestion.
In 1961, the telephone company applied to the Board of Appeals for approval of a plan to allow the company to convert part of the lawn to parking. The request was denied. The City Council on appeal sustained the Board and instructed the company to submit an acceptable plan. The company secured an option on the property at the corner of Line Avenue and Oneonta Street and presented a request for a special exception use to construct a parking lot. The application was denied.
In December, 1974, the telephone company obtained another option to purchase the property at the corner of Line Avenue and Oneonta Street. Located on this property is a single-family brick home generally in keeping with the other homes in the area. The telephone company plans to remove the house and build a parking area to accommodate 26 to 28 vehicles. After approval by the City Council of the special exception use application involved in this case, the telephone company purchased the property.
The telephone company filed an application with the Metropolitan Shreveport Board of Appeals requesting a "special exception use" and "variance" to permit construction of the parking area on the property under option. The application was later amended to include an additional request for the addition of a second floor to the existing telephone facility. The addition to the existing building is needed in order to expand and modernize services to telephone customers in southeast Shreveport. The building houses equipment serving approximately 30,000 customers. It does not contain offices and a total of about 20 employees work there on shifts over a 24 hour period.
In May, 1975, the Board of Appeals held a public hearing on the telephone company's application. All five regular members and the two alternate members of the Board of Appeals were present. Both the proponent and opponents of the application presented their cases. The application was fully discussed at this and subsequent meetings of the Board. The application was ultimately approved with all seven members of the Board voting. Four of the five regular members, plus one of the alternate members voted to approve the application. One regular member and one alternate voted not to approve the application.
The decision of the Board of Appeals was appealed by the opponents to the City Council and in July, 1975, after receiving briefs from representatives of each side, the Council upheld the decision of the Board of Appeals.
The opponents filed suit in district court for judicial review of the action of the Board of Appeals and City Council, seeking to set the action aside. Named defendants were the Board of Appeals and its members, the City Council and its members, and telephone company. After trial de novo, in which each side was allowed to fully present its case, the trial court, in a succinct, well-reasoned written opinion, dealt with each issue raised by the plaintiffs, upheld the action of the municipal authorities and dismissed plaintiffs' suit. Plaintiffs appealed.
Constitutionality
Appellants contend that the "special exception use" provisions of the Shreveport Zoning Ordinance are unconstitutional as written or as applied in this case for the reason that the provisions are unconstitutionally vague and constitute a denial of due process and of equal protection of the law. Specifically, appellants attack Section VII.C. which establishes the Board's authority to grant special exceptions and Section *1230 II.B.2.a.(3) which authorizes special exception uses in R-1residential districts as failing to provide sufficient standards or guidelines for the granting of special exception uses.
McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78 (1956) and Bultman Mortuary Service, Inc. v. City of New Orleans, 174 La. 360, 140 So. 503 (1932) are authority for the proposition that a zoning ordinance which fails to establish a sufficiently adequate and definite guide to govern officials with respect to granting of variances, exceptions or permits is void. Summerell v. Phillips, 282 So.2d 450 (La. 1973), while not dealing with special exceptions specifically, is a recent Supreme Court expression of the rule that a zoning ordinance must "establish sufficiently definite and adequate standards to govern officials with respect to the uniform treatment of applications for permits under the ordinance."
Section VII.C. of the Shreveport Zoning Ordinance (Ordinance 184 of 1957) establishes the power and authority of the Board of Appeals in connection with granting of special exceptions:
"6. Powers of the Board. * * *
"* * *

"c. Special Exceptions. To authorize, in specific cases where the ordinance calls for review and determination by the Board, such special exceptions as will permit the construction and use of a building or building group or the use of land in accordance with a definite site plan. Special exceptions shall be subject to such terms and conditions as may be fixed by the Board."
Section II.B.2. governs R-1 districts. Under "Permitted Uses" the section provides for (1) uses by right, under which certain uses are listed; (2) uses requiring Planning Commission approval, under which are listed certain uses; and (3) special exception uses. The subsection on special exception uses provides:

"(3) Special Exception Uses. The uses listed below are subject to the same approval of location and site plan as uses requiring Planning Commission approval; in addition, these uses are declared to possess such characteristics of unique or special form that each specific use shall be considered an individual case and shall be subject to approval of the Board of Appeals in accordance with the provisions of Section VII governing Special Exceptions:
 Art Gallery or Museum
 Cemetery; need not be enclosed
 within structure
 Church, including Parish House,
 Community House, and Educational
 buildings
 Correctional, Detention, or Penal Institution
 Electric Substation; need not be
 enclosed within structure, but must
 be enclosed within a wall at least
 ten feet high and adequate to obstruct
 view, noise, and passage of
 persons
 Hospital or Sanitarium
 Nursery, Day Care, or Kindergarten
 School, Elementary and/or Secondary,
 meeting all requirements of the
 compulsory education laws of the
 State of Louisiana
 Telephone exchange but not including
 administrative offices, shops, or
 garages.
(City  Trailer, Mobile Home, when used as
only) a dwelling unit; not including trailer
 court, must have water and sewer
 connections
(Parish  Trailer, mobile home, when used as
only) a dwelling unit on a building site,
 not to include Trailer Court or Mobile
 Home Park
 University or College (non-profit)"
Section II.B.2.a.(3) provides that special exception uses are subject to the same approval of location and site plan as uses requiring Planning Commission approval. Section II.B.2.a.(2) sets forth the standards governing approval of location and site plan by the Planning Commission as follows:
". . . as being appropriate with regard to transportation and access, *1231 water supply, waste disposal, fire and police protection, and other public facilities, as not causing undue traffic congestion or creating a traffic hazard, and as being in harmony with the orderly and appropriate development of the district in which the use is located: . . ."
These identical special exception use provisions were upheld in the face of the same contentions of invalidity in Reeves v. North Shreve Baptist Church, 163 So.2d 458 (La. App. 2d Cir. 1964). In that case the court was dealing with an application for a special exception use for a church with parking area in a residential district of Caddo Parish. The special exception use provisions of the Parish zoning ordinance are identical to those of the city ordinance and the same Board of Appeals functions under both ordinances. This Court, in a carefully considered opinion authored by Judge Edward L. Gladney, held that the provisions of the zoning ordinance provide ample safeguards and guides for special exception uses. The Court concluded "that the portions of the ordinance attacked contained adequate safeguards, guides and standards to allow regulations by the courts in the event of arbitrary or unreasonable and unlawful exceptions." In the course of the opinion this Court noted that the Board of Appeals and the governing body must have a certain amount of flexibility and that it is desirable that a zoning ordinance permit reasonable discretion in the administrative authorities. The Reeves case is directly in point and is controlling on the issue of constitutionality.
The ordinance prescribes adequate standards for the Board to follow in granting special exception uses. First, special exceptions are only available for a small number of limited, specifically designated uses, including a telephone exchange. Most of the listed special exception uses are of a public nature and serve the overall neighborhood or community. Transportation and access, the public nature of the facility, traffic congestion, and orderly and appropriate development are listed as standards. The Shreveport Zoning Ordinance provides both the necessary standards and the necessary flexibility.
The proposed plans of the telephone company in this instance come within the standards and guidelines established by the zoning ordinance. The special exception use provisions of the ordinance are constitutional, as written and as applied in this case.
PrematurityLack of Approval by Planning Commission
Appellants contend that the action of the Board of Appeals was premature in that the location and site plan proposed by the telephone company was not first approved by the Metropolitan Planning Commission. Appellants argue that prior approval by the Planning Commission is required by Section II.B.2.a.(3) of the zoning ordinance and by Section 14 of Act 34 of 1954 which is the legislation authorizing zoning by the City of Shreveport.[1]
As noted and quoted above, Section II.B.2.a.(3) dealing with special exception uses provides that "[t]he uses listed below are subject to the same approval of location and site plan as uses requiring Planning Commission approval; . . ." . This provision does not mean that Planning Commission approval of location and site plan is required in connection with applications for special exception uses which are subject to approval of the Board of Appeals. As discussed *1232 in the preceding section of this opinion, this language means that the location and site plan must be approved by the Board of Appeals in the same manner and according to the same standards as uses requiring Planning Commission approval.
Section 14 of Act 34 of 1954, relied on by appellants, provides that after adoption of the "master plan" no street, park or any public way, ground, place or space, no public building or structure, school or school site, or no public utility, whether publicly or privately owned, shall be constructed or authorized in the area of the adopted plan until and unless the location and extent thereof shall have been submitted to and approved by the Planning Commission. Section 14 of the Act deals with the legal status of the "master plan" which is entirely separate and apart from the zoning ordinance. The master plan is an overall comprehensive plan for the physical development of the planning area. It is not a zoning plan or a zoning ordinance.
Act 34 of 1954 authorizes the City of Shreveport to adopt a master plan, to adopt a zoning ordinance, to adopt subdivision regulations, to adopt building regulations and other matters. The record before us does not disclose the status of any "master plan" or ordinance in connection therewith adopted by the City of Shreveport. Requirements of the statute in regard to matters other than zoning or requirements of city ordinances dealing with such matters as the master plan, subdivision regulations, building codes and the like are not at issue in this suit. These are matters separate and apart from the application for a special exception use under the zoning ordinance.
Under the zoning ordinance, approval by the Planning Commission of the location and site plan of a special exception use is not required. The telephone company's application and the procedure followed by the Board of Appeals and City Council in approving same complied in all respects with the requirements of the zoning ordinance, which is all this suit is concerned with.
Participation by Alternate Members of Board of Appeals
Appellants next contend that participation in the decision by the two alternate members of the Board of Appeals was contrary to the provisions of Section 32 of Act 34 of 1954 and rendered the Board's action void. The statute provides:
"The zoning ordinances shall provide for a Board of Appeals of five members and two alternate members, . . .
"* * *
"Alternate members shall serve only when called upon to form a quorum, and when so serving shall have all the powers and duties of full members."
The evidence shows that it is a policy of the Board of Appeals to have as many members as possible, regular and alternate, present at all meetings in order to assure the presence of a quorum throughout the hearing, deliberation, and decisional process. Members of the Board of Appeals serve as a civic duty without compensation. There are necessarily times when members are absent from meetings and this becomes more of a problem when a particular matter is considered over the course of several meetings.
We perceive no legal objection to participation by both regular and alternate members in the hearing and deliberative proceedings. When taking formal action, the alternate members have no power to act if a quorum of the regular members is present. The alternate members should not have voted on the application in this case since a quorum of regular members was present. Nevertheless, the application was approved by a vote of four to one by the regular members present at the meeting in which the decision was made. It was not shown that the presence of and participation by the alternate members in any way affected the outcome of the decision or in any way prejudiced the rights of appellants. The error was harmless and does not affect the legality of the Board's action.
*1233 Spot Zoning
Appellants next contend that approval of the use of the property as a parking lot constitutes illegal "spot zoning." Spot zoning is a term often used in zoning matters and has been given a variety of definitions in reported cases. See 51 A.L. R.2d 263. In general, spot zoning is the singling out of a small parcel of land for use classification different from that of the surrounding area for the benefit of the owners of such property and to the detriment of others. In Four States Realty Co. v. City of Baton Rouge, 309 So.2d 659 (La. 1975), the court held that rezoning on a piecemeal or spot basis is highly suspect. A city purporting to act under its police powers cannot create in a large area of property zoned in one classification an island of one parcel of land relegated to another zoning classification when no rational reason exists for such a separate classification. In Four States the Supreme Court invalidated action of the City Council of the City of Baton Rouge in rezoning certain lots upon a finding that the action was arbitrary and capricious, which seems to be the real test for determining the validity of zoning action. In the case of Sears, Roebuck & Company v. City of Alexandria, 155 So.2d 776 (La.App.3d Cir. 1963) writ refused 245 La. 83, 157 So.2d 230 (1963), the court explored in depth the subject of spot zoning. The court noted that all so-called spot zoning is not illegal and listed a number of factors to be considered in determining whether so-called spot zoning is invalid.
First of all, it should be noted that the property in question is not being rezoned to a classification different from that of the surrounding area. The zoning classification remains R-1. The use of the property which has been approved, telephone exchange and accessory off-street parking, is consistent with the comprehensive plan of zoning contained in the zoning ordinance in that it is one of the uses permissible in an R-1 district, with Board of Appeals approval. The ordinance itself contemplates and gives notice to the public that a telephone exchange is one of the uses permitted in an R-1 district.
The approval of the application in this case has benefits both for the neighborhood and the public generally. The neighborhood will benefit in that a serious parking problem will be eliminated. The public generally, including the neighborhood, will benefit in that telephone service will be modernized and improved. No serious detriment to the surrounding property has been proven. The property in question, located on a busy thoroughfare, across the street from a fire station, and a large portion of which is presently being used as a telephone exchange, is reasonably susceptible to the proposed expansion and development. Approval of the special exception use in this case was not arbitrary, unreasonable or capricious, was in the public interest, and was not prohibited spot zoning within the generally accepted meaning of that term.
Parking as an Authorized Special Exception Use
Appellants contend that the zoning ordinance does not authorize a parking lot as a special exception use in an R-1 district. If the parking lot were to be considered as a separate and distinct use from the telephone exchange, on a separate and distinct building site, that argument would be correct.
We are not, however, dealing here with two separate uses on two separate building sites. The application is for one contiguous tract of land or building site to be used as a telephone exchange, which necessarily requires some accessory off-street parking. A telephone exchange, and necessarily its accessory off-street parking, is one of the special exception uses specifically authorized by the zoning ordinance. The ordinance specifically defines building site as the land area occupied or to be occupied by a building and its accessory buildings and including such open spaces, yards, minimum area, off-street parking facilities and off-street truck loading facilities as are required by the ordinance.
*1234 Appellants argue that there is no off-street parking requirement for a telephone exchange because that particular use is not listed in Section V. of the ordinance dealing with off-street parking. To the contrary, Section V. clearly requires off-street parking for all uses. Section V.A.1. provides that no land shall be used or occupied, no structure shall be erected, altered, used, or occupied and no use shall be operated unless the off-street parking facilities herein required are provided. Section V.A.5. sets forth the amount of off-street parking required for certain listed classifications and provides that the classification of uses listed shall be deemed to include and apply to all uses. A telephone exchange is not specifically listed in the classification of uses, but could come within the classification of commercial or industrial and, if there is any question as to which classification it comes under, the requirement is to be determined by the zoning administrator. In any event, off-street parking is required, is obviously desirable and, therefore, is a permissible use of part of the building site of a telephone exchange authorized as a special exception use in an R-1 district.
Variance
Appellants contend that the trial court erred in justifying the action of the Board of Appeals as a "variance" as defined in the zoning ordinance. Although the application requested a special exception and a variance, the action of the Board of Appeals actually constituted the approval of a special exception use. The variance provisions of the zoning ordinance are not applicable and need not be considered.
Supplementary Use Regulations
Appellants contend that the proposed parking lot site does not comply with the supplementary use regulations stipulated in Section III. of the zoning ordinance and, particularly, the supplementary yard regulations. If the parking area were to be considered as a separate building site, this contention might have merit. However, as previously discussed, the parking area is only part of the one building site. Taking the property as a whole the supplementary use regulations are complied with.
Expansion of Nonconforming Use
Appellants contend that the construction of the parking area and addition of the second story to the existing building will constitute a prohibited expansion of a nonconforming structure and nonconforming use. Nonconforming structure and nonconforming use are defined by Section I. of the ordinance as a building or use which lawfully existed on the effective date of the ordinance and which does not conform to the regulations of the district in which it is located. The telephone exchange building constructed prior to the effective date of the comprehensive zoning ordinance, and its use as such, fall within these definitions. Section VI. of the ordinance provides that the lawful operation of a nonconforming use as such use existed on the effective date of the ordinance may be continued. A nonconforming use in a structure may be extended throughout the structure provided no structural alterations, except those required by law or ordinance, are made therein. A nonconforming structure in which a nonconforming use is operated shall not be enlarged or extended. Appellants contend that under the provisions prohibiting expansion of nonconforming structures and uses, the proposed expansion cannot be permitted.
Approval by the Board of Appeals of the use of the property and the building located thereon as a telephone exchange as a special exception use changes the status of the structure and use from that of nonconforming to that of a permitted use. As a permitted use, the addition of the second story and construction of the parking area is permissible.
Under the special exception use provisions of the ordinance the Board of Appeals would have the authority to approve the original use of property in an R-1 district as a telephone exchange pursuant to which a telephone exchange building with accessory off-street parking could be constructed.
*1235 Since the Board has the authority to approve a new and initial use of the property for these purposes, it certainly has the authority to approve the expansion of an existing facility.
The Facility as a "Telephone Exchange"
Appellants contend the existing facility is not a "telephone exchange" as contemplated by the ordinance and as defined by the telephone company itself. The telephone company witnesses called the facility a "central office" and referred to the entire Shreveport-Bossier area as a "telephone exchange." The facility houses automatic telephone equipment. It does not contain office space as such. The limited number of employees who work there are required to service the equipment. We agree with the trial court that the facility is exactly the type facility contemplated by the term "telephone exchange" as used in the zoning ordinance. The term might not coincide with the jargon of the industry but it coincides with a generally accepted layman's concept of the meaning of the term.
Contact of Members of the Board of Appeals and City Council
Appellants contend that the telephone company representatives made a concerted effort to and did, in fact, contact the individual members of the Board of Appeals and City Council, outside of the public hearing, in order to influence their decision and that such activity impaired the functioning of the Board and the Council and resulted in a denial of a fair and impartial hearing.
The evidence shows that the telephone company formulated a plan of contacting members of the Board and the Council on a one-on-one basis in an effort to encourage favorable consideration of the application. The evidence does not disclose the exertion of any undue pressure or influence. The testimony affirmatively establishes that the members of the Board and Council were not, in fact, influenced or persuaded by the contacts but exercised their judgment and discretion based on the facts properly presented. The evidence is that members of the zoning authorities are often contacted personally in connection with zoning matters. The exercise of zoning authority is more legislative in nature than judicial or quasi-judicial. It should also be noted that there was evidence of some contact by some opponents with some of the individuals charged with the responsibility of administrative decisions in this case. As noted by the trial judge there was no evidence at all that the contacts made affected the decision of any of these people.
We readily conclude that the opponents were afforded a full and complete opportunity to be heard and that the application was fairly and impartially considered and decided by the administrative officials involved. The judgment decision of the authorities was reasonable and justified by facts in the record. The action was neither arbitrary, discriminatory or unreasonable, nor the result of any undue influence or pressure.
Effect on the Neighborhood
Appellants argue that the trial court erred in finding that the proposed use would not have an adverse effect upon the surrounding residential neighborhood and property values. At the trial de novo in the district court, both sides presented expert real estate witnesses as to the effect the proposed plans would have on the neighborhood. One witness testified there would be an adverse effect and the other witness testified there would not. Neither witness's testimony is more persuasive than that of the other. The trial court correctly held that appellants failed to prove any substantial adverse effect on the neighborhood.
Conclusion
The role of the court in reviewing a zoning case was well-stated in Reeves v. North Shreve Baptist Church, supra:
"It is a well established legal principle that on review of the proceedings and decisions of zoning boards and officers, the Court may inquire into any conduct *1236 of the board or officer in rendering a decision which is contrary to law or unauthorized by law; but the court ordinarily will not interfere unless such decision is illegal, arbitrary or unreasonable as a matter of law."
The actions of the Board of Appeals and City Council were not illegal, arbitrary or unreasonable. They were justified by reasonable evaluations of both the zoning ordinance and the existing factual situation.
For the reasons assigned, the judgment of the district court is affirmed at appellants' costs.
Affirmed.
NOTES
[1] Act 34 of 1954 authorized metropolitan planning and zoning in the City of Shreveport and environs of Caddo Parish. Act 52 of 1962 contained substantially identical provisions and appears in the Revised Statutes as LSA-R.S. 33:140.1 et seq. The 1962 Act provided that it should take effect upon adoption of the amendment to Article XIV, Sec. 29 of the La.Const. of 1921 proposed by Act 529 of 1962. The amendment was adopted. The 1962 Act also provided that it was to be construed supplementarily to Act 34 of 1954, which was not to be considered repealed. Constitutional authority for zoning by municipalities was provided in Article XIV, Sec. 29 of La.Const. of 1921, as amended. Constitutional authority for zoning by local governmental subdivisions is now contained in Article VI, Sec. 17 of the La.Const. of 1974.