BONIN, J.,
dissents with reasons.
hi respectfully dissent.
A
The moratorium in this case is arbitrariness masquerading as regulation. Our Constitution protects the right of every person, even a Nevada corporation like Moreteo, “to acquire, own, control, use, enjoy, protect, and dispose of private property.” La. Const. Art. I, § 4(A). While this light like the others is not in every respect absolute, it is only “subject to reasonable statutory restrictions and the reasonable exercise of police power.” Id. (emphasis added) And because this moratorium as written is not a reasonable exercise of the police power, it unconstitutionally deprives Moreteo of the equal protection of the laws and its enforcement should be enjoined.
Here, after Moreteo acquired its property, a first permits-moratorium, which applied to only some council-districts in Plaquemines Parish, was adopted. The stated purpose was to afford the Parish Council adequate time to adopt a so-called Master Plan. Without a Master Plan being adopted, the moratorium expired. Upon its expiration, Moreteo applied for its permit. But for the moratorium, it is undisputed that Moreteo would have been entitled to a permit for the construction of a large store on its property.
|aThe Parish Council’s response, at the instance of Councilmember Hinkley, was to adopt a second moratorium, which was declared to be retroactive; the intent and effect of the retroactivity provision was to prevent approval of Moretco’s pending permit application. The second moratorium was for the purpose of “prohibiting the issuance of permits ... for the construction, renovation or remodeling of any commercial property” within the boundaries of the affection portions of the parish. But what the Parish Council bound, it could also loose. Thus, the ordinance allowed that “[o]nly with the permission of the Parish Council, through an Ordinance, as per law, said moratorium may be considered for release by this Council upon application of a qualified permit-applicant who presents for consideration sufficient evidence that the following conditions are met and satisfactory to this Council”. Plaquemines Parish Council Ordinance No. 11-18 (emphasis added)[1]
Without picking through each of the conditions, it suffices to note that they *299 range on a continuum from the clarity of “zoning compliance” to the obscurity of “such other reasonable issues before the Council.” On the basis of these conditions, we are to believe that the Plaque-mines Parish Council is not unbridled in its exercise of its police power with respect to this property. Of course, the “zoning compliance” condition cannot save the moratorium. If the permit-application was not zoning compliant, there is no issue. The moratorium itself is the means by which “zoning compliance” — a straightforward, objective and ascertainable standard — is ignored!
When the condition of “such other reasonable issues before the Council” is considered within the context of the moratorium-ordinance, then it is clear that the moratorium cannot constitutionally be enforced because it is enforceable at the whim of the Council. A zoning ordinance “is invalid where it leaves its ^interpretation, administration or enforcement to the unbridled discretion, caprice or arbitrary action of the municipal legislative body or administrative bodies or officials.” McCauley v. Albert E. Briede & Son, 231 La. 36, 48, 90 So.2d 78, 82 (1956). The fundamental requirement for any zoning ordinance is that it “must establish a standard to operate Uniformly and govern its administration and enforcement in all cases.” Id. (emphasis added).
This specific moratorium-ordinance is the antithesis of a valid zoning ordinance.[2] At every turn, it is designed to reserve unto the Council exclusively, and on its own terms, the interpretation, administration, and enforcement of the Ordinance. See, e.g., Gaudet v. Economical Super Mkt., Inc., 237 La. 1082, 1091, 112 So.2d 720, 722-723 (1959) (holding that ordinance allowing the granting of a conditional use permit “will not have an unduly detrimental effect upon the character of the neighborhood, traffic conditions, ... public health, public safety or general welfare” is unconstitutional and invalid because it “fail[ed] to prescribe uniform rules or standards to guide the City Council”); Summerell v. Phillips, 282 So.2d 450, 453 (La.1973) (zoning ordinance requiring adoption of an ordinance to create a special zone for a mobile home or trailer park but which provides no objective standards to City-Parish Council is unconstitutional); Morton v. Jefferson Parish Council, 419 So.2d 431, 435 (La.1982) (ordinance respecting issuance of a special use permit is unconstitutional notwithstanding “inclusion of general criteria on which approval is contingent”).
Ordinance 11-13 “denies equal protection of the law and is invalid” because it allows the Council to waive or uphold the moratorium without any standard to guide it. Cf. McCauley, 231 La. at 50, 90 So.2d at 83; see also La. Const, art. I, § 3 (“No person shall be denied the equal protection of the laws.”) Because Ordinance 11-13 is unconstitutional on its face, Moreteo is entitled to injunctive hrelief without the ordinary requisite showing of irreparable injury under La. C.C.P. art. 3601 A. See Jurisich v. Jenkins, 99-0076, p. 4 (La.10/19/99), 749 So.2d 597, 599 (when the conduct which is sought to be enjoined or restrained is unconstitutional, i.e. a violation of a constitutional right, petitioner is entitled to injunctive relief without showing irreparable harm). See also McCau-ley, id. (“Judge is hereby ordered to issue a preliminary injunction”); Gaudet, 237 La. at 1094, 112 So.2d at 724 (“Additional *300 ly, the district judge is hereby directed to issue a preliminary injunction”).
Thus, I would reverse the trial court and order the issuance of the preliminary injunction to prevent the enforcement of the moratorium.
B
That really should be the end of the matter.[3] But there is that other matter, which the majority opinion addresses and which, I suppose, was the impetus for the appearance of the National Urban League and the Urban League of Greater New Orleans as amici curiae in this matter. The majority opinion describes it as Moretco’s argument that the “actions of the Council [were] motivated by the racial bias of Councilman Hinkley,” at p. 12, 112 So.3d at 293, ante.
In Part A, ante, I addressed the “what” of the moratorium and, in this Part, I address the “why.” At the outset I concede that there may be many good public policy (or even political) reasons for the adoption of a permits-moratorium in certain limited areas of Plaquemines Parish. But at the same time I want to emphasize that the trial judge did not decide whether Mr. Hinkley was racially biased. Thus, the majority’s treatment rejecting Moret-co’s claim by concluding that Moreteo “failed to make a prima facie case in support of this allegation,” at p. 12, 112 So.3d at 293, ante, and its subsequent justification claiming to be deferring to |sthe trial judge’s determinations of credibility, at p. 16, 112 So.3d at 295, ante, are insupportable on this record. My reading of the trial judge’s written reasons, however, differs from the majority; the trial judge only concluded as a matter of law that Moret-co’s claim of Mr. Hinkley’s bias was “premature.” The trial court side-stepped racial bias as a motivating factor. Because there are “other, legitimate considerations that could have prompted the passage of these ordinances,” id. (emphasis added), the trial judge refused to address the matter of racial bias.
My purpose here is not now to determine Mr. Hinkley’s true[4] motivation because it ought to have nothing to do with the result in this case. My purpose is to highlight that by enacting such a whimsical ordinance, which in practice entrusts all the unbridled decision-making to the selfsame decision-maker, necessarily excites the suspicions of the disaffected applicant and others. And we should not be dismissive of or diminish the rightful concerns (which the record establishes are justified) that a public officer’s official actions are undertaken from an objectionable motive nor automatically conclude that a hypothetical justification for why the ordinance was adopted precludes an examination and determination of the actual basis for its adoption. See, e.g., Berry v. Volunteers of America, Inc., 10-832, p. 12 (La.App. 5 Cir. 4/26/11), 64 So.3d 347, 353 (councilperson’s public objection about relocating Orleans Parish public housing residents to Jefferson Parish; genuine issue of fact whether councilperson’s official action were legitimate exercise of zoning authority or effort to thwart specific project).
Oddly, while the moratorium was in effect and without awaiting the adoption of the so-called Master Plan, the Council at *301 the instance of Mr. Hinkley adopted Ordinance 11-49. Ordinance 11-49 applies to the same limited ^geographical areas of Plaquemines Parish as Ordinance 11-13.[5] Ordinance 11-49 amended the parish’s Comprehensive Zoning Ordinance so as to require for Moretco’s property a Planned Unit Development and limit its retail establishment floor area to twenty-five thousand square feet. Ordinance 11^9 also incorporated “the land use and development standards enumerated in the Plaque-mines Parish Master Plan.” This action seems to reinforce that for whatever motive Mr. Hinkley was adamant about impeding Moreteo’s reasonable development of its property.
“Whenever the propriety of a zoning decision is debatable, it will be upheld.” Palermo Land Co., Inc. v. Planning Comm. of Calcasieu Parish, 561 So.2d 482, 493 (La.1990). Here, I emphasize that the “what” of this moratorium ordinance is not, in my view, debatable. But — if we are past that issue and must go to the “why”— we cannot avoid deciding and resolving as a matter of fact whether the adoption of these ordinances were the reasonable exercise of the police power or a reprehensible exercise of political power. Thus, before the case is decided against Moreteo, we should remand to the trial court for a determination of the basis of the official action. See Berry, supra.
I, therefore, dissent.

. All of the “following conditions" are itemized in the majority opinion at pp. 3-4, at 112 So.3d at 289-90, ante.

. I want to emphasize, however, that a true moratorium (that is one in which a temporary delay in the issuance of any and all permits without any provision for an exception) would not be antithetical to a valid zoning ordinance.

. That is, we would not need to reach the issues of retroactivity, presumption arising from the failure to call a witness, or the prohibition of ex post facto laws on the impairment of contracts.

. There were several unflattering suggestions about why Mr. Hinkley was motivated to oppose Moretco's use of its property. It may well be that no one is the true motivation and it may well be that none are.

. Ordinance 11-13 describes the applicable portion of District 2 as that of “south of the Intracoastal Waterway (GIWW)”. Ordinance 11-49 describes the applicable portion of District 2 as “east of the Intracoastal Waterway”.