289 So.2d 327 (1973)
Joseph S. PATERNOSTRO et al.
v.
PARISH OF JEFFERSON et al.
No. 5863.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied February 20, 1974.
Writ Refused April 26, 1974.
*328 Montgomery, Barnett, Brown & Read (Nathan T. Gisclair, Jr. and Thomas N. Lennox, New Orleans), for plaintiffs-appellants.
Alvin Rudy Eason, Bruce D. Burglass, and Kenneth L. Sanders, New Orleans, for defendants-appellees.
Before REDMANN, LEMMON and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiffs have appealed from a judgment dismissing their petition for an injunction to compel the Parish of Jefferson, its President and Councilmen, to amend their comprehensive zoning ordinance so as to reclassify plaintiffs' property from R-1 Single Family Residential to a C-1 Neighborhood Commercial.
The property measures 285.36 feet on Clearview Parkway by a depth and frontage of 170 feet along Fairfield Street and West Esplanade Avenue. It forms the southeast corner of the intersection of Clearview Parkway and West Esplanade Avenue. The original petition for amendment of the comprehensive zoning ordinance was filed by plaintiffs on December 23, 1970. In accordance with the requirements of the ordinance a public hearing was held on January 27, 1971, before the Parish Planning Director and the Planning Advisory Board. At the hearing plaintiffs' attorney advocated the change for the reasons that the property is located on a heavily trafficked intersection; the other three corners of the intersection were already then zoned and being used as commercial property; the status of the property as residential facing commercial property was detrimental to its value; and the property could not and would not develop in its R-1 Single Family Residential classification. In opposition there appeared representatives of various civic and neighborhood associations and individual property owners who felt that the proposed change would have a detrimental effect on their property and that of the neighborhood. Opponents included a home owner *329 whose property fronted on Fairfield adjacent to and on the east of the subject property and a resident on the other side of the square with property fronting on Woodlawn between Fairfield and West Esplanade. Filed at the hearing in opposition to the change were a petition containing 338 signatures and some correspondence.
The Planning Department recommended denial of the petition as submitted, but also recommended that the property be reclassified to R-2 Two Family Residential for the following reasons:
"1. Reclassification of the petitioned property to R-2 Two-Family Residential would provide both a buffer and transitional zone between the low density zoning to the east and the commercial zoning to the west.
"2. A substantial amount of vacant commercial property presently exists in this area precluding any need for additional commercial zoning in the neighborhood.
"3. New commercial districts should be provided in the form of consolidated commercial centers and not as additional strip zoning along the Parish's highways and major streets.
"4. Approval of the petition as submitted would result in the unwarranted and unneeded encroachment of the commercial zoning district into a residential neighborhood."
The Planning Advisory Board, however, by a 3 to 2 vote recommended that the petition be approved because "a commercial classification of the petitioned property would provide uniformity among the four corners forming the intersection of Clearview Parkway and West Esplanade Avenue."
On April 1, 1971, the Jefferson Parish Council unanimously denied the application of plaintiffs, whereupon these proceedings were initiated on the grounds that plaintiffs were being denied equal protection of the laws in that the other three corners of this intersection had been granted commercial classification by the Parish Council; the denial of their request was arbitrary, unreasonable and capricious; and the action of the defendants resulted in plaintiffs' property being taken out of commerce because of its unsuitability for residential use and thereby constituted a taking of their property without compensation in violation of their constitutional rights.
In dismissing plaintiffs' petition the trial court gave the following reasons for judgment:
"From the evidence presented, the Court finds that petitioners' property in Square 43 can be used for residential purposes, and that changing the zoning classification of the subject property to C-1 Commercial would have a detrimental effect upon the remainder of the property in Square 43, making it less desirable for residential purposes, and would result in a decrease in value to the other developed property in this Square, including the two existing residences on adjoining lots, one of which lies adjacent to the subject tract sought to be zoned commercial.
"The petitioners purchased the subject property after the Council had refused to rezone the tract, and were aware of the zoning classification at the time they acquired the property."
The trial judge referred to Dufau v. Parish of Jefferson, 200 So.2d 335 (La. App. 4th Cir. 1967); State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613, and Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App. 1st Cir. 1966), and concluded that the action of the defendant was not arbitrary, capricious, unreasonable or discriminatory and did not constitute a taking of plaintiffs' property without compensation or due process of law.
At the trial of the case plaintiffs produced the testimony of Mr. Hibbert Neal, *330 an expert in traffic Engineering, Mr. Dalton Truax, an expert in the field of real estate management and sales, Mr. Joseph S. Paternostro, one of the plaintiffs, and Mr. Louis C. Bisso, an expert in the field of planning and zoning.
Mr. Neal testified that both Clearview Parkway and West Esplanade Avenue are major streets accommodating 12,000 and 8,000 vehicles per day already at the time of the trial and expected to accommodate much heavier traffic within the next few years. Mr. Truax testified that the property is virtually unmarketable in its present R-1 Single Family Residential classification because of the heavy traffic at the intersection and because it "is just about surrounded by commercial .... facing four commercial corners." He also stated that he didn't "think it is particularly desirable" for doubles or multi-family use "because of the complicated ingress and egress you would have .... it really would not necessarily lend itself to really desireable (sic) situation for renting." But he admitted that certain of the usages permitted by the C-1 Neighborhood Commercial classification of the subject property would have an adverse effect on the value of a home adjacent to the property.
Mr. Bisso, the principal witness of plaintiffs, testified that the R-1 classification of plaintiffs' property on one corner, in the face of the C-1 classification of the other three corners, caused the intersection to be out of balance and constituted "a spot zoning in reverse." In his opinion, good zoning practice would require that plaintiffs' property be zoned commercial so that its front would be consistent with the front of the properties on the other three corners. He spoke of qualitative analysis in zoning, which leads to a consideration of the use of properties in relation to one another, and concluded that when this test was applied to the subject property it should be made consistent in its use with the other three corners. His theory was to put high intensity uses on a perimeter of major streets with low intensity uses with respect to noise, traffic and parking, such as R-1 Residential, in the center of development. Admitting that the rezoning of the subject property would have an adverse effect on the residential property to the east and south of the subject property, he felt that in balancing the equities the change was justified. Finally, he attempted to refute each one of the reasons given by the Planning Director for his recommendations quoted above.
Firstly, he rejected the idea that the subject property be made a buffer between commercial and residential because "the property that fronts has a greater affinity than the property in the rear," so that the subject property's zoning should follow that of the other three corners rather than the property to the east. While agreeing that such a buffer zone is desirable this would not be the proper location for it considering traffic conditions and other factors. Secondly, he rejected as irrelevant the quantative analysis approach (no need for additional commercial property) and advocated instead the qualitative analysis approach (the compatibility between the subject and the surrounding properties). Thirdly, he insisted that this was not strip zoning but only a logical extension of the existing commercial center provided by the other three corners. Finally, he rejected the notion that the change would be an encroachment of commercial on residential areas, stating that the converse was now true in that there existed an encroachment by residential development upon a commercial area.
Defendants presented the testimony of Mr. Richard C. Mouledous, an expert in planning and zoning who had served as Planning Director for the Parish of Jefferson for four and a half years in the past, and Mr. Hugh N. Ford, the present Planning Director of the Parish. Mr. Mouledous stated that it would be "bad land use" to zone the subject property commercial inasmuch as it is adjacent to residential property. The following excerpt *331 from his testimony is a summary thereof:
"I think the prime problem they have on the corner is to protect the single families that are already built. If all of this was vacant and three corners .... Actually, I'd just count the north part of West Esplanade. Its so wide its (sic) naturally buffered by itself. There is a good bit of distance and no connection between that and the south side. And you're looking at the two squares, 42 on the West and then 43 on the East. If everything were vacant there and one corner was zoned C-1, we may well recommend that the other corners also be C-1. But with the houses already built there it would be very hard to do."
Finally, Mr. Ford reiterated that the change would have a detrimental effect on the neighboring property and that the subject property should be the transition zone between the commercial properties on the other corners and the residential property to the east. He noted that as to each one of the other corners there is a gradual stepdown from commercial to R-1. In his opinion the highest and best use for the subject corner is the classification of R-2.
Plaintiffs did not pray for any alternative relief and in oral argument before this Court repudiated any relief other than that of obtaining the C-1 classification. Thus, for plaintiffs to prevail they must show not only that the action of the Council in failing to grant a change from R-1 was arbitrary, unreasonable and capricious, but in addition that their refusal to grant the change all the way to C-1 was such.
If this Court were sitting as a zoning board to decide the merits of plaintiffs' application we might conclude that the change in zoning should be made. The many cogent arguments advanced by Mr. Bisso and the other witnesses might very well outweigh those advanced by defendants' witnesses with respect to the merits of the proposed change. But courts may not become virtual zoning boards and it is not our function to judge the zoning merits of the proposed change or the wisdom of the Council in turning it down. We may disagree with the Planning Director and the Parish Council, and had we been sitting on the Parish Council we may have voted for the change, but that is not to say that plaintiffs are now as a matter of law entitled to invalidate the action taken by the Parish Council. For the plaintiffs to prevail they must show not merely that the decision of defendants was wrong but that it was arbitrary, unreasonable or capricious, and we cannot find that plaintiffs have borne their burden of proof in this connection.
The heart of plaintiffs' case is that with their property zoned R-1 while the other three corners of this intersection are zoned C-1, they are the victims of discrimination. This constitutes the arbitrary nature of defendant's action. But the facts do not bear out this contention.
To begin with, while it is true that the two corners on the north side of West Esplanade are zoned C-1, this avenue is 180 feet wide and forms a natural buffer between zoning districts. But plaintiffs have placed their emphasis not on these two corners but rather on the combination of the zoning of the four corners with particular attention devoted to the southwest corner, across Clearview Parkway from plaintiffs' property. In the Planning Director's report this reference is made to that property: "On April 4, 1968 the Council reclassified the square to the west (Square 42) from R-1 Single Family Residential to C-1 Neighborhood Commercial..." Standing alone, that would suggest discrimination on the part of the defendants. But there is an explanation for this in the jurisprudence itself in the case of Dufau v. Parish of Jefferson, supra. As can be seen by reference to that case the whole of Square 42 had been zoned commercial since January 28, 1960, and *332 after much of the property was already being used for commercial purposes the Council in 1966 reclassified the property as residential. This Court held that the Council's reclassification was unreasonable and that it was arbitrary for the Council to impose a residential classification on a handful of property owners in that square when in fact most of the property in the square was already being used for commercial purposes. This Court found that the property was "surrounded by commercial activity and, under the circumstances, their property would be completely valueless as residential property and would, in fact, be practically unsalable." Obviously, if plaintiffs are in the same position as were the plaintiffs in Dufau we would be compelled to grant the same relief, but we do not find that the facts are the same by any means. There is no commercial activity in progress in the entire square where plaintiffs' property is located.
On the contrary, the only activity in their square is the existence of three single residences and one Church, with the balance of the square undeveloped, and the testimony is not convincing that plaintiffs' property is valueless and unsalable as residential property. It may be that the property should not be zoned R-1 Single Family, but in the comprehensive zoning ordinance between R-1 Single Family and C-1 Neighborhood Commercial there are classifications of R-2 Two-Family Residential, RR-3 Three and Four Family Residential and R-3 Multiple Family Residential. Mr. Mouledous and Mr. Ford were unequivocal in their opinions that the property was suitable for those intermediate classifications, and while Mr. Bisso felt that R-2 was inappropriate it was strictly based on the theory that the paramount consideration was the zoning at the front of the subject property and not on the side or at the rear. In effect, he was willing to sacrifice the value of the residential property to the east of plaintiffs' property on the theory that the equities were in favor of plaintiffs' position. Perhaps there is merit to this opinion, but this is not a matter of equity but rather a matter of law and we cannot conclude that the Jefferson Parish Council erred as a matter of law; that is, was arbitrary because it did not conclude as did Mr. Bisso that the equities were in favor of the change plaintiffs proposed.
One of the great zoning problems undoubtedly confronting any governing body is that pure zoning theory is difficult to apply to an area which began to develop before the adoption of a comprehensive zoning ordinance. The ideal may be for all four of these corners to be commercial with a gradual transition through the high density residential classification until the points where it would become appropriate for R-1 Residential, and even defendants' experts felt that if they were "starting from scratch" they might be inclined to zone all of these corners commercial. But unfortunately, the Parish Council was not dealing entirely with variables when it was confronted with plaintiffs' petition. Not only is the balance of the square R-1 Residential but it is already built up to some extent in a residential fashion.
Likewise, there is merit to Mr. Bisso's position that heavy vehicular traffic at the intersection makes this property more suitable for high intensity land use. This testimony is consistent with that expressed by him in Jemison v. City of Kenner, La.App., 277 So.2d 728, but we conclude that in the light of all of the facts and circumstances of this case the Planning Director's recommendation that the property be rezoned to a higher density residential use and thereby become a buffer between the other three corners of the square and the residential property on the other side is not only reasonable but sensible and practical as well, and the defendant's action on plaintiffs' petition was not arbitrary, unreasonable or capricious.
For the first time in a supplemental brief plaintiffs have attacked the constitutionality of the zoning ordinance on the theory of Fondren v. Morgan City, 220 *333 So.2d 136 (La.App. 1st Cir. 1969) in which an ordinance having to do with the granting of special permit by the City Council was held to be unconstitutional because there were no standards or guidelines set forth in the ordinance to show when such special permits should be issued. Granting or withholding of such permits was entirely discretionary and the Court held that a zoning ordinance should specify the circumstances under which one would have a right to have a special permit issued. This theory is entirely consistent with Gaudet v. Economical Supermarket, Inc., 237 La. 1082, 112 So.2d 720, and McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So. 2d 78. Plaintiffs argue that in the same way the Jefferson Parish Zoning Ordinance is unconstitutional because the Council's decision to change or not to change is based on each member's own whim and caprice. After it sets forth the procedure for application, public hearing and recommendation of the Planning Director and Advisory Board, the ordinance provides with respect to the Council only:
"A final yea and nea vote shall have been taken on the proposal by the governing authority, within 90 days dated from the date of the public hearing."
While the ordinance was prepared pursuant to Act 537 of 1954, which sets forth the general purpose of the zoning law to be that of "promoting health, safety, morals or the general welfare of the Parish..." there are no standards or guidelines to be found for the Council anywhere in the ordinance, and in the final analysis theirs is a subjective vote on a requested zoning change.
But there is a difference between the application for a special permit or a conditional use permit and a change in the comprehensive zoning ordinance. See the discussions in 1 Anderson Zoning § 4.26-4.28 and 3 Anderson Zoning § 15.09-15.10. In the case of a special or conditional use permit there is no question but that the property is properly zoned but an exception or exemption is sought from certain restrictions in the zoning classification for the benefit of the particular property owner involved, but the theory of a change in the comprehensive zoning ordinance is that in an application of the principles and the ideals followed by the governing body in the adoption of the ordinance as a whole the particular property is now in the wrong classification either because of some mistake in the original zoning or because of changes in the neighborhood. Dufau v. Parish of Jefferson, supra. Applicable is the following from 101 C.J.S. Zoning § 275:
"Where the wording of ordinances must be changed in order to accomplish the desired revision, the act is legislative and not administrative; but, on the other hand, where a regulation is changed pursuant to a provision of an existing ordinance permitting an administrative variance on the finding of certain facts, the act is administrative."
Thus, a change in a zoning classification is a valid exercise of the legislative function, and legislators have discretion in doing so. It follows that the ordinance under consideration is not vulnerable to a charge of unconstitutionality because of the absence of objective standards or guidelines for the councilmen to follow in passing upon applications for changes in zoning and the cases cited and relied upon by plaintiffs in this connection are inapposite.
Accordingly, the judgment is affirmed, plaintiffs to pay all costs of this appeal.
Affirmed.
LEMMON, Judge (dissenting from denial of rehearing).
I agree that judges of an appellate court, in reviewing a proposed zoning change, should not substitute their opinions for the opinions of the members of the zoning authority. However, the reviewing court must examine the evidence in favor of and *334 in opposition to the proposed change and should affirm only if the decision of the authority is clearly correct or is one on which reasonable men might reach different conclusions.
In the present case I believe the decision of the Jefferson Parish Council, insofar as Lots 1, 2, 3, 4, 5, 6 and 7 are concerned, was unreasonable because (1) the uncontradicted evidence established that this corner should have a high intensity land use similar to the other three corners; (2) this property is presently in the wrong classification because of changes in the neighborhood and in traffic patterns since the adoption of the original comprehensive ordinance (see Dufau v. Parish of Jefferson, supra); (3) the Council in 1960 changed the original classification of the southwest corner to commercial, apparently to conform with the classification of the northwest and northeast corners and with the developing neighborhood and traffic patterns;[1] and (4) the property is relatively valueless in its present classification.
Furthermore, the testimony of plaintiffs' experts demonstrated that the basis for the Zoning Director's recommendations against commercial zoning was incorrect or inapplicable.[2]
I therefore believe that denial of the requested classification for high intensity use was an unreasonable restraint on the use of private property, not justified in the public interest or necessary for the public welfare.
However, the denial of reclassification of Lot 30 was reasonable, in that a change to commercial zoning will adversely affect the adjoining residence, as well as the residential property across Fairfield Street. Lot 30 thus forms the desired buffer zone or zoning of transition, either in its present classification or in a medium intensity use recommended by the Planning Director.
I would reverse the decision of the Parish Council, except as to Lot 30.
NOTES
[1] Although this corner was reclassified to residential in 1966, that obviously discriminatory action was overturned by the district court, which decision this court affirmed in Dufau v. Parish of Jefferson.
[2] Even so, the Zoning Director recognized the erroneous present classification and recommended change to a medium intensity use, after which the Planning Advisory Board recommended the change to commercial classification.