399 So.2d 1179 (1981)
James HERNANDEZ, Plaintiff-Appellee,
v.
CITY OF LAFAYETTE, City Council of Lafayette, Defendants-Appellants.
No. 8098.
Court of Appeal of Louisiana, Third Circuit.
March 26, 1981.
Rehearing Denied May 8, 1981.
*1180 Charles L. Siemon, Wendy U. Larsen, of Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., Voorhies & Labbe, John W. Hutchison, Allen R. Ingram, Lafayette, for defendants-appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John G. Torian, II, and Michael G. Durand, Lafayette, for plaintiff-appellee.
Before GUIDRY, CUTRER and LABORDE, JJ.
LABORDE, Judge.
Appellants, the City of Lafayette and the City Council of the City of Lafayette appeal an adverse judgment of the district court in an action for declaratory and injunctive relief filed by James E. Hernandez, appellee, challenging the validity of the zoning ordinance of the City of Lafayette as it applied to land owned by Hernandez. The trial court rendered judgment in favor of Hernandez and directed the City of Lafayette to rezone plaintiff's property from R-1-A to B-1-O.
The issue on appeal is the validity of the zoning ordinance of the City of Lafayette as applied to the Hernandez property. We reverse the decision of the trial court. The presumption of validity which attaches to legislative enactments can be overcome or defeated only by proof that no competent evidence has been adduced to support the result of the legislature's action. We find that the zoning decision of appellants as it applies to the Hernandez property is supported by substantial and competent evidence adduced in proceedings which were regular and orderly.

THE FACTS
On three (3) separate occasions beginning on August 12, 1975, Hernandez sought to have his property rezoned from R-1-A residential (single family detached and townhouse) to B-1-M (medical office), R-2 (apartments) and B-1-0 (professional office). All three (3) legislative attempts failed to become law under the provisions of the charter of the City of Lafayette. In his petition, Hernandez alleged that the City's failure to rezone his property as requested violated the Louisiana Municipal Zoning Regulations, LSA-R.S. 33:4721 et seq.[1] and *1181 the constitutions of the State of Louisiana and the United States.
The Hernandez property is a 16.7 acre highly irregular tract of land located in the City of Lafayette immediately south of the intersection of West Bayou Parkway and South College Road. (See appendix "1" attached hereto. The Hernandez property is shaded.) The property located to the north, east, south, and west of the Hernandez property is zoned R-1-A. To the northwest, across West Bayou Parkway from the narrow neck of the Hernandez property is a tract of land zoned R-2 which has been developed into townhouses. A tract of land zoned B-1-M is located to the northwest on the opposite side of South College Road. To the east of the Hernandez tract is Coulee Mine, a fifty foot drainage canal. To the south of the Hernandez tract is the largest sewerage treatment plant in the city of Lafayette. The sewer plant was constructed prior to most of the development in the neighborhood, including the Hernandez residence. The property is traversed by a series of utility easements. The property is currently improved with two single-family detached residences, and has been used for residential purposes for many years. The Hernandez property is zoned R-1-A.
In his written reasons for judgment dated June 9, 1980, the trial judge concluded that:
"After reviewing the law and the evidence and hearing the arguments of counsel, the Court finds the denial of the rezoning of the Hernandez property to have been an arbitrary, capricious, unreasonable and excess use of the police power. In addition, this Court finds this denial of rezoning bears no substantial relation to the promotion of the public health, safety, morals or general welfare of the citizens of the City of Lafayette."
On June 25, 1980, the trial court entered judgment in favor of Hernandez and directed the City of Lafayette to rezone the Hernandez property to B-1-O.
The appellants urge four (4) trial court errors:

"1.
The trial court erred by exceeding the proper scope of judicial review by considering evidence of motives of the city.

2.
The trial court erred by exceeding the proper scope of review by substituting its judgment for that of the city's.

3.
The trial court erred by its findings of facts which are so contrary to the manifest weight of the evidence that they and the court's ruling are clearly erroneous.

4.
The trial court erred in excluding expert testimony based on hearsay during defendants' case."
Assignments of error 1 and 2 will be considered and discussed together. In view of our decision we pretermit discussion of errors 3 and 4 assigned by appellant.
The validity of the zoning ordinance of the City of Lafayette as applied to the Hernandez property is the issue on appeal. We have previously stated that the presumption of validity which attaches to legislative enactments can be overcome or defeated only by proof that no competent evidence had been adduced to support the results of the legislature's action. Clearly, we will not exceed that scope of review.

THE PROPER JUDICIAL SCOPE OF REVIEW
The standards or principles by which zoning regulations are tested by Louisiana courts are well-established. See, e. g., Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975); State ex *1182 rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440 (1923); West v. City of Lake Charles, 375 So.2d 206 (La.App. 3rd Cir. 1979), writ refused, 378 So.2d 435 (La.1979); Trustees Under the Will of Pomeroy v. Town of Westlake, 357 So.2d 1299 (La.App. 3rd Cir. 1978), writ denied, 359 So.2d 205 (La.1978).
"It is well settled in our jurisprudence that duly enacted zoning ordinances are presumed to be valid." (Emphasis added)
West v. City of Lake Charles, 375 So.2d at 209.
Zoning, as a legislative power, is presumed valid and one challenging a zoning enactment bears an extraordinary burden to overcome the presumption of validity. Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Four States Realty Co., Inc. v. City of Baton Rouge, supra; and Henry v. City of Monroe, 349 So.2d 1006 (La.App. 2nd Cir. 1977).
"The court will uphold the ordinance unless it is clearly shown that the action of the governing authority was arbitrary or unreasonable, or that the action taken violated a provision of the constitution or of the enabling statutes."
Kirk v. Town of Westlake, 373 So.2d 601 at 602 (La.App. 3rd Cir. 1979), writ denied, 376 So.2d 1268 (La.1979). Doubtful cases will be resolved in favor of the validity of the challenged zoning enactment. Four States Realty Co., Inc. v. City of Baton Rouge, supra; and Kirk v. Town of Westlake, supra.
And, in testing the validity of an ordinance, the courts have nothing to do with the wisdom or good policy of the ordinance. This judicial deference to legislative discretion in the enactment of laws, zoning or otherwise, is a cornerstone of the doctrine of separation of powers.
"[A]lthough it has been indicated in some decisions that a court may be given by statute power to substitute its judgment for that of a city government relative to zoning matters, a statute so providing has been deemed unconstitutional on the ground that the legislative functions of adopting zoning plans and laws may not be performed by the judicial department of government."
Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App. 1st Cir. 1966).
A challenge to a zoning decision in Louisiana is not an appeal from the decision of a lower tribunal wherein the court scrutinizes the record below to test the accuracy of the City's decision; rather it is a de novo proceeding which tests whether the result of the City's legislation (here the R-1-A classification) is "arbitrary and therefore a taking of property without due process of law." Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384, 1385 (La.App. 4th Cir. 1978). In Meyers v. City of Baton Rouge, supra, the First Circuit noted that even where no competent evidence to support a zoning decision was adduced in front of the governing body, the resulting legislation will nevertheless be upheld if the result is supported by evidence adduced at trial. The Meyers court explained:
"The initial action by appellants herein is not an appeal but rather a suit attacking the validity of a duly adopted municipal ordinance ..." (at 281)
And
"that the hearings required are designed solely to afford interested parties an opportunity to be heard before the governing authority makes a decision under its police power ... How, when and where the local authorities gain knowledge of the subject matter is of no concern to the courts. What is said at the required public hearings is not necessarily the criteria of reasonableness when an ordinance of such nature is attacked as being arbitrary or discriminatory. The test to be applied is whether it is in fact arbitrary, unreasonable and discriminatory in the light of all attending circumstances." (at 282-83) (Emphasis added)
In Westside Lbr. & Supply v. Parish of Jefferson, supra, the Fourth Circuit reversed a trial court's decision because it had applied the wrong test in reviewing a local legislative zoning decision. The trial court *1183 had ruled that the test was "simply to determine whether or not the board acted arbitrarily.... and whether or not the decision of the board was supported by substantial and competent evidence adduced in proceedings which were regular and orderly." In reversing the trial court, the Fourth Circuit reaffirmed the distinction between review of administrative and legislative decisions of local government. The proper test for legislative decisions is not whether the board acted arbitrarily in light of the evidence it had before it at the time of decision but whether the resulting "legislation is so arbitrary and therefore a taking of property without due process of law."

THE HERNANDEZ CHALLENGE TO THE ZONING ORDINANCE
One challenging a zoning enactment has the difficult burden of proving to the Court that the existing classification is unreasonable, that is, that it bears no substantial relationship to the public health, safety, morals or general welfare of the municipality. It is not enough to show that the new zoning sought is reasonable. West v. City of Lake Charles, supra. Nor is it enough to show that reasonable men might reach a different conclusion from that reached by the City, Maher v. City of New Orleans, 516 F.2d 1051, 1061 (5th Cir. 1975), cert. denied 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 because courts do not substitute their judgment for that of the legislative branch of government.
"But courts may not become virtual zoning boards and it is not our function to judge the zoning merits of the proposed change or the wisdom of the Council in turning it down. We may disagree with the Planning Director and the Parish Council, and had we been sitting on the Parish Council we may have voted for the change, but that is not to say that plaintiffs are now as a matter of law entitled to invalidate the action taken by the Parish Council."
Paternostro v. Parish of Jefferson, 289 So.2d 327, 331 (La.App. 4th Cir. 1973), writ refused, 293 So.2d 183 (La.1974).
In our view the trial court failed to perform this duty. The record contains substantial evidence to support an objective determination that the property should remain zoned R-1-A, residential, rather than be rezoned under a commercial classification.
Evidence adduced at trial shows that rezoning of the subject property from residential to commercial could be incompatible with and have an adverse effect on the surrounding areas. For one, the vast majority of the developed land in the general vicinity of the subject property is zoned residential. In fact, except for the fifty-foot neck of plaintiff's property, the subject tract is surrounded by residentially zoned or residentially used property. In this regard, there was considerable testimony showing legitimate concern that allowing a commercial intrusion into the residential neighborhood may initiate a chain of further commercial rezonings thus destroying the neighborhood's residential character. Plaintiff's own planning expert, Dr. Dennis Ehrhardt, testified that such rezoning would be likely to cause this so-called "domino effect." His testimony was corroborated by testimony of Mr. Bert Landry, a former director of city planning whose deposition was introduced into evidence by plaintiff. Mr. Landry stated:
"The [city] would be hard pressed to deny similar uses .... it would make the ultimate character of the area commercial." (Tr. 1081)
Another adverse impact on the surrounding area is the increased traffic congestion which would result from a commercial rezoning of plaintiff's land. The record in this regard shows that development of the property for non-residential uses would produce unsafe traffic conditions. For example, Mr. Richard Gern, a traffic expert with 23 years of practical experience throughout the nation, testified regarding the traffic impact of R-1-A, R-2, B-1-O and B-1-M zonings of the subject property. Based on his analysis of known trip generation rates adjusted to reflect local traffic factors in Lafayette, Mr. Gern testified that unsafe *1184 traffic conditions would result if the property were developed as R-2, B-1-M or B-1-O. In contrast, he testified that R-1-A would have no adverse impact on adjacent roads because the traffic system had available capacity for such uses. Mr. Gern further testified that in order to accommodate the traffic generated by the more intense use classification, substantial changes in the character of roads through established neighborhoods would be required to the substantial detriment of those neighborhoods. In Gern's opinion, such changes would have serious adverse impacts upon the city as a whole. In addition, any non-residential classification would substantially decrease intersectional capacity and result in traffic 36% over design capacity which, according to Mr. Gern, would undoubtedly lead to unsafe conditions.
Upon our review, we hold that the record in this case does reveal a valid, objective basis upon which the City of Lafayette could reasonably conclude that retaining the R-1-A zoning classification of the subject property serves the public health, safety and welfare.
Upon our finding that the City of Lafayette did not act unreasonably in retaining the R-1-A zoning classification, our inquiry continues. We now must determine whether the City acted arbitrarily or in an unconstitutional manner in refusing to reclassify plaintiff's property.
That the City of Lafayette did not act arbitrarily is evident from its zoning history, not only of the area surrounding the subject property, but of other areas throughout Lafayette as well.
The Director of Planning, the City's Zoning Administrator, an expert land use planner and a traffic engineer testified in regard to the planning issues involved in the R-1-A classification as applied to plaintiff's property. According to the record the property is located in a "planning" area circumscribed by South College Road, Pinhook Road, the Vermilion River, Brentwood Boulevard and Johnston Street. Within that neighborhood are two high intensity use corridorsone along Johnston Street and the other along South College Road. The zoning history of the vicinity of the subject property reveals that the southern border of the high intensity zone along South Collegethe boundary plaintiff asks the Court to extend down West Bayou Parkwayhas been intact since 1963 and that the City has never waivered in its treatment of the subject property.
Mr. W. Anthony Wiles, a land use planner with 18 years of experience in land planning and development, after being qualified as an expert, described in detail a series of zoning and planning analyses he conducted. These analyses were based on an examination of the zoning ordinances adopted by the City of Lafayette, along with its zoning maps and all ordinances rezoning property since 1963. According to Mr. Wiles this examination revealed several distinct policies:
"1. that the area of the subject property has always been maintained as low density single-family residential with the exception of a high intensity corridor along South College and Johnston.
2. that the zoning actions of the City reflect a very strong relationship between the arterial network and major concentrations of commercial development within the City.
3. that large scale commercial development has been confined to the intensity corridor, along South College and Johnston Streets, the central business district, the oil center, or the periphery of the City.
4. that property previously zoned R-1-A has very rarely been rezoned unless the action would conform to the aforementioned policies." (Tr. 1652, 1654)
The City's zoning decisions have been uniform in confining commercial and business districts to frontage on the City's arterial road network.
Mr. Wiles' study also showed that South College has been designated for high intensity uses since the area was annexed into the city. Moreover, the natural boundary at the intersection of West Bayou Parkway *1185 and South College between the high intensity corridor and the R-1-A district has not waivered in 17 years.
We find the City's denial of rezoning in the instant case to be consistent with its prior land use policies. Hence, we hold that the City did not act arbitrarily.
We next determine whether the City's action denies plaintiff due process by depriving him of all beneficial use of his property.
Louisiana courts have held that a regulation which deprives a landowner of all beneficial use of his property deprives him of his property without due process of law. Hardy v. Mayor and Board of Aldermen et al., 348 So.2d 143 at 149 (La.App. 3rd Cir. 1977), writ refused, 350 So.2d 1212 (La.1977); Dufau v. Parish of Jefferson, 200 So.2d 335, 337 (La.App. 4th Cir. 1967). However, the fact that a zoning ordinance does not permit an owner the most advantageous economic use of his land does not render the ordinance invalid. West v. City of Lake Charles, supra.
Applying the above principles to the instant case, we hold that plaintiff failed to show that the subject property has no practical use under the present R-1-A classification. In fact, plaintiff's own witnesses established the utility and value of the property for development under the R-1-A classification. For example, Dr. Ehrhardt testified that, based on his familiarity with the housing market in Lafayette and his experience in real estate, the property is worth at least $1,000,000. In addition, the City's expert appraiser, the only appraiser who testified as to land values, stated that his analysis (based on two separate appraisal approaches) indicated a value of $75,000 per acre which equals approximately $1,180,000 for the tract excluding the site of the Hernandez home.
In conclusion, our review of the record convinces us that plaintiff has failed to meet his burden of proving that the City's classification of the property was unreasonable, arbitrary, or a denial of due process. Further, we do not find that there has been an abuse of discretion or excessive use of power by the City in refusing to rezone the Hernandez property.
For the foregoing reasons the judgment of the district court is reversed and set aside.
It is now ordered, adjudged and decreed that plaintiff's suit against defendants be dismissed with prejudice. All costs in the trial court as well as the costs of this appeal are assessed against the plaintiff.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the result.
*1186 
NOTES
[1] LSA-R.S. 33:4721 provides:

"For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict the height, number of stories, and size of structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing."