878 So.2d 880 (2004)
TSC, INC. & Larry L. Taylor, Plaintiffs-Appellants,
v.
BOSSIER PARISH POLICE JURY, et al., Defendants-Appellees.
No. 38,717-CA.
Court of Appeal of Louisiana, Second Circuit.
July 14, 2004.
Rehearing Denied August 12, 2004.
*881 Joseph W. Hendrix, Shreveport, for Appellants, TSC, Inc., Larry Taylor and Patricia K. Taylor.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, New Orleans, Patrick R. Jackson, for Appellees, Bossier Parish Police Jury, Attorney General Charles C. Foti (Successor to Richard P. Ieyoub), Jeff Rogers, Henry Mitchell, Jimmy Cochran, Wayne Hammack, William Altimus and Jerome Darby.
Before STEWART, DREW and HARRISON (Pro Tempore), JJ.
STEWART, J.
This matter involves review of a zoning decision by the Bossier Parish Police Jury pertaining to land along the Red River which the plaintiffs, Larry Taylor and TSC, Inc., sought to have rezoned for development of a residential subdivision. After the police jury voted against rezoning, the plaintiffs filed suit alleging that the police jury's decision was arbitrary and capricious and that the police jury lacked authority to zone the land at issue. Upon entertaining cross motions for summary judgment, the trial court ruled in favor of the Bossier Parish Police Jury and dismissed the plaintiffs' claims with prejudice. We affirm the trial court's judgment.

FACTS
Larry Taylor applied to the Bossier City-Parish Metropolitan Planning Commission ("MPC") to rezone 65 acres of land with over 2000 feet of frontage along the Red River for the purpose of residential and commercial development.[1] The tract of land is bordered on the west by the Red River and on the east by property owned by the Union Pacific Railroad Company. A double set of railroad tracks runs through the Union Pacific Property. The single means of access to Taylor's tract is the Taylor River Road which runs from Benton Road and crosses the Union Pacific property. Taylor's land is surrounded by property either zoned I-2, a heavy industry district, or used for industrial purposes.
*882 A small northern section of Taylor's land is zoned R-A, a residence-agriculture district, and the larger southern section is zoned I-2. Taylor filed four applications for rezoning as follows:
(1) App. No. P-9-02: To change the northernmost tract zoned R-A, residence-agriculture district, to B-3, a community and central business district, to develop a restaurant, boat launch, and boat storage facility.
(2) App. No. P-10-02: To change the largest section of the tract consisting of approximately 45 acres zoned I-2, a heavy industry district, to R-1, a one-family residence district, to develop a residential subdivision.
(3) App. No. P-11-02: To change a small tract zoned R-A, a residence-agriculture district, to R-2, a multiple-family residence district, to build townhouses.
(4) App. No. P-12-02: To change a small tract zoned I-2, a heavy industry district, to R-A, a residence-agriculture district, for use of the area as a dirt pit during construction of the subdivision.
A map of the area shows the northernmost section of land as that designated for commercial development, followed to the south by the area proposed for townhouses, then the residential subdivision, and finally the dirt pit.
The rezoning request of App. No. P-9-02 was granted. However, the other three applications were denied by the police jury following a public hearing on July 24, 2002, when both Taylor and opponents to the rezoning were heard.
Taylor emphasized the limited amount of river front footage available for development in Bossier Parish, the need for industrial and residential areas to co-exist in the river front area, and the tax revenues that would accrue to the parish from development of his land as a residential and commercial area. Noting areas in either Bossier Parish or Bossier City where residential areas were next to industrial areas, Taylor asked to be treated equally to others in application of the zoning ordinances. Taylor's case also emphasized the buffer areas between his land and the surrounding industrial districts, including the levee which his land sits behind and his plans to construct a 4 foot berm with an 8 foot fence. In addition, there would be a gate at the entrance to the subdivision approximately 300 feet from the double railroad tracks and a road for commercial traffic to by-pass the residential area.
Businesses operating in the surrounding heavy industrial districts opposed rezoning on the grounds that residential and commercial development would not be compatible with the existing heavy industry. Industrial operations surrounding Taylor's land include Hanson Aggregates West, Inc., a sand and gravel terminal which utilizes the railroad; West Viking Drive, L.L.C., which leases land adjoining Taylor's to Builders' Supply Company for a ready-mix concrete plant; Reliant Energy, which conducts an operations center to the north of Taylor's land and has a high pressure pipeline along the southern edge of its property; Union Pacific Railroad; and O.S. Johnson, which operates an asphalt business on Union Pacific property. These opponents raised concerns that noise, odors, and hours of operation of industrial businesses would negatively impact a nearby residential subdivision and result in various community relations problems in time. There was also concern for the safety of children who might wander onto industrial property and get hurt. Other reasons for opposition were increased traffic in the area and delays at the railroad crossing, where trains sometimes stopped. Train delays and stoppage were of particular concern since this would block entrance to the residential subdivision, *883 possibly endangering lives in the event of an emergency. Additionally, the existence of an oil well and pipeline on Taylor's land and the high pressure gas line nearby raised environmental and safety concerns.
Following the denial of the three applications for rezoning, Taylor filed a "Petition for Judicial Review, Writ of Mandamus, and Damages" naming the police jury and the individual members who voted against rezoning as defendants.[2] Taylor alleged that the police jury's decision was arbitrary and capricious and without any substantial relationship to health, safety, or general welfare of the municipality. In a supplemental petition, Taylor added the attorney general as a defendant and sought declaratory and injunctive relief on the theory that the police jury lacked authority to zone his land. Taylor alleged that Act 527 of 1978, which enacted La. R.S. 33:106.1, repealed both the broad zoning authority of Bossier Parish over certain tracts of land outside the incorporated area of Bossier City and parish ordinances for regulation of such land. He further alleged that restoration of this authority by amendment of La. R.S. 33:106.1 in 2001 did not allow for regulation of his land since the police jury had not passed new ordinances. As an alternative theory, Taylor alleged that Section 19:47 of the Bossier Parish Zoning and Land Use Regulations is unconstitutional for lack of objective language and standards to guide the police jury's decisions.
The police jury and Taylor filed cross motions for summary judgment. The police jury asserted that Taylor would not be able to meet the burden of proving that the denial of rezoning was arbitrary or capricious. The police jury asserted that it acted in good faith and for legitimate reasons including the incompatibility of residential and heavy industrial areas, terribly inadequate access to the proposed subdivision, the safety and traffic problems related to access and the presence of the railroad tracks, and the safety concerns due to the presence of the oil well and pipelines on the property. The police jury also asserted that Act 527 of 1978 did not repeal authority to zone the land at issue, and alternatively, that if so, the 2001 amendment of La. R.S. 33:106.1 restored that authority. Finally, the police jury asserted that the attack on the constitutionality of the ordinance was insufficiently pled. Taylor's motion pertained to the legal issues surrounding the authority of the police jury to zone his land.
After a hearing, the trial court rendered a judgment denying Taylor's motion for summary judgment, granting the police jury's motion for summary judgment, and dismissing Taylor's claims with prejudice. In a thorough and well-reasoned written opinion, the trial court concluded that Act 527 of 1978 limited the policy jury's authority over certain "large lots" outside incorporated limits of Bossier City but did not affect the zoning ordinances which governed the whole of zoning within the five mile boundary outside the corporate limits of the city. Once the legislature reinstated the authority over these "large lots" in 2001, regulation of these lots fell within the purview of the ordinances already in effect. The trial court also concluded that Taylor did not come forward with evidence to corroborate his arguments that the police jury's decision was arbitrary and capricious. Taylor now appeals.

DISCUSSION
The eight assignments of error asserted by Taylor raise three issues for review. *884 These issues are the trial court's denial of Taylor's motion for summary judgment on the authority of the police jury to zone his land; the granting of the police jury's motion for summary judgment and failure to find that the actions of the police jury were arbitrary and capricious and amounted to a compensable taking of Taylor's land; and the failure to find the ordinance unconstitutional for lack of objective standards.
We will conduct a de novo review of the trial court's ruling on the summary judgment motions utilizing the often repeated and well-known principles that govern the trial court's consideration of whether summary judgment is appropriate. See La. C.C.P. arts. 966-967; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226.

Taylor's Motion for Summary Judgment
Taylor sought summary judgment on the grounds that the police jury lacked authority to zone his land. The basis for this argument is Act 527 of 1978 which enacted La. R.S. 33:106.1 to provide, in relevant part, as follows:
§ 106.1. Planning commissions; exempt subdivisions; septic tank and field drains permitted
A. Notwithstanding any other provisions in this Chapter to the contrary, no parish, regional, or other planning commission, except those of the parishes of Assumption, Cameron, St. Charles, St. James, Lincoln, Plaquemines, St. Tammany, Washington, and St. John the Baptist, and those of any city or municipality within said parishes and except those covering a jurisdiction with a population greater than three hundred thousand, shall have jurisdiction over the following subdivisions of land except with respect to requirements for utilities, drainage and street planning dimensions, composition, and alignment:
(1) Any parcel of land situated outside an incorporated area which is owned wholly by one owner or co-owners and is divided into single-family lots of a minimum square footage of twenty-five thousand square feet, with a minimum width of 125 feet of frontage, provided that the size of the lots can support Office of Health and Environmental Quality requirements for individual sewerage disposal systems and individual water systems after consideration of recognized standards of suitability.
Act 527 further provided, "All laws or parts of laws in conflict herewith are hereby repealed." Act 527 was approved by the governor on July 12, 1978. Bossier Parish was not among the list of excepted parishes.
On April 11, 1978, prior to enactment of La. R.S. 33:106.1, Ordinance 783 of 1978 was adopted and made part of the Code of Ordinances of Bossier Parish. Subchapter A of Chapter 19 of Ordinance 783 is entitled "Zoning and Land Use Regulations for that Unincorporated Part of Bossier Parish Lying Within Five Miles of The Bossier City Corporate Limits." These provisions govern zoning of all land lying within five miles of the Bossier City corporate limits, a category inclusive of the land at issue. This zoning authority derived from Act 189 of 1954 which gave Bossier City and the police jury the power to create the MPC and to formulate a master plan for the development of land within Bossier City and within five miles of the city.
The issue presented is whether Act 527 of 1978 repealed Chapter 19 of Ordinance 783. As did the trial court, we find that it did not. Chapter 19 is a broad zoning ordinance for regulation of the entirety of the land lying within five miles of the corporate limits of Bossier City. It is not specific to the land affected by Act *885 527, which limited the jurisdiction of the MPC and police jury only with respect to designated parcels of land outside incorporated areas. Other than this narrow jurisdictional limitation, the jurisdiction of the police jury over land lying outside the incorporated area of Bossier City remained intact, and the parish ordinances, specifically Ordinance 783, remained in effect. However, the ordinance could not be utilized to regulate for purposes in conflict with Act 527. While the police jury lacked jurisdiction as provided in La. R.S. 33:106.1, it maintained jurisdiction over other land outside the corporate limits of Bossier City for purposes of regulation in accordance with Ordinance 783. As such, we perceive no conflict between Chapter 19 of Ordinance 783 and the limitation of jurisdiction in Act 527 of 1978 which would have necessitated repeal of the ordinance.
Taylor relies on Attorney General Opinion No. 78-1088 of August 21, 1978, which answers whether the authority of the MPC is in conflict with or repealed by Act 527. The opinion states that Act 527 restricts MPC power as to "some property located outside the unincorporated area of Bossier City" and concludes:
[T]hat section of Act 189 of 1954 giving the Bossier City-Parish Metropolitan Planning Commission extensive powers in an unincorporated area within five miles of the corporate limits of Bossier City will be partially repealed by Act 527. Regarding those parcels of land exempted from planning commission regulation in Act 527, the Commission will only have jurisdiction with respect to requirements for utilities, drainage and street planning dimensions, composition and alignment.
This comports with our view of Act 527 as limiting the jurisdiction of the MPC and police jury over some parcels of land. Nothing in the attorney general opinion supports Taylor's position regarding repeal of Ordinance 783. As stated, this ordinance is not limited only to those parcels of land affected by Act 527, but rather applies to all land in the unincorporated part of the parish lying within five miles of the Bossier City limits. Since the MPC and police jury lacked jurisdiction to regulate those parcels of land designated by Act 527, except for specified purposes, the provisions of Ordinance 783 would not apply to those parcels of land but would continue to apply to other land within five miles of Bossier City's corporate limits.
We find that Ordinance 783 was not repealed by Act 527, and we also find that amendment of La. R.S. 33:106.1 in 2001 to include Bossier Parish among the list of excepted parishes restored full jurisdiction enabling the MPC and police jury to regulate all land lying within five miles of Bossier City corporate limits pursuant to Chapter 19 of Ordinance 783. As stated by the trial court:
[T]he zoning ordinances ... were not affected by Act 527 of 1978. Act 527 merely negated the Police Jury's authority over "large lots." It did not affect those regulations which governed the whole of zoning within the five mile boundary outside the corporate limit. The regulations had not been repealed, rather it was the authority over specific types of property that was repealed. Once this authority was reinstated by the legislature, the "large lots" simply fell into the purview of the ordinances which were already in place. Therefore, the MPC and the Police Jury had authority to make zoning decisions about Mr. Taylor's property when he applied to them for rezoning considerations.
For these reasons, we find no merit to Taylor's argument that the police jury lacks authority to regulate zoning of his land. Taylor's claims for declaratory and *886 injunctive relief based on the police jury's lack of authority were properly denied.

Police Jury's Motion for Summary Judgment
The police jury asserted that Taylor would not be able to meet the burden of proving that the denial of rezoning was arbitrary and capricious. Under La. C.C.P. art. 966(C)(2), when the mover will not bear the burden of proof at trial on the matter before the court on summary judgment, his burden is to point out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to meet his evidentiary burden at trial, there is no genuine issue of material fact for trial. La. C.C.P. art. 966(C)(2).
The law governing review of a zoning decision was set forth by the Louisiana Supreme Court in Palermo Land Co. v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 491-492 (La.1990) as follows:
Zoning is a legislative function. The authority to enact zoning regulations flows from the police power of the various governmental bodies....
As early as 1923, this court set forth the proper scope of judicial review of zoning decisions. In State ex rel. Civello, 154 La. 271, 97 So. 440 (La.1923), this court stated:
It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort, or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
It is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot  not the courts. Id. 97 So. at 444. See Village of Euclid v. Amber Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), in which Civello is cited with approval and quoted. See also, Hernandez v. City of Lafayette, 399 So.2d 1179, 1182 (La.App. 3d Cir.1981), wherein the Third Circuit correctly noted, "even where no competent evidence to support a zoning decision was adduced in front of the governing body, the resulting legislation will nevertheless be upheld if the result is supported by evidence adduced at trial." Id. at 1182.
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law.... Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.
The differing needs of each parish, according to its size, population, level of industrial and commercial development, and the rapidity of growth of such development, will naturally result in different planning and zoning regulations in each parish. The need for change through rezoning or reclassification will depend on the same factors, thus rezoning decisions are properly left to those officials who are most familiar with the needs of *887 each community. Judicial review of zoning decisions acts merely as a check on this legislative power granted to parish officials to ensure that there is no abuse of power. Courts will not and cannot substitute their judgment for that of the legislative authority.
(Footnotes and some citations omitted.)
In ruling on the motion for summary judgment, the trial court considered the records and transcripts from the police jury proceedings, affidavits by the six members who voted to deny Taylor's request for rezoning, depositions of the four members who voted in favor of rezoning, a plat of Taylor's property, the applicable ordinance, Taylor's affidavit, and affidavits of persons familiar with the railroad crossing. This evidence shows that both the MPC and police jury took into account various safety, health, and welfare concerns and considered the long-term impact of a residential area located in the middle of heavy industrial zones in denying the requested rezoning. The incompatibility of a residential subdivision and the surrounding land zoned or used for heavy industrial purposes was a major factor in the denial of Taylor's applications. Though Taylor proposed buffer zones as a solution to this concern, one jury member, Bill Altimus, stated in his affidavit that he did not believe the buffer zones sufficiently addressed the compatibility issue. Industrial uses, hours of operation, and noise were all taken into account as potential causes of problems between industrial and residential areas. The existence of an oil well near the south end of the proposed subdivision and a pipeline which would run through the subdivision were also factors that raised environmental concerns pertaining to the health and safety of residents in the proposed subdivision. The single means of access to the subdivision over the Union Pacific railroad tracks and the traffic and safety problems that would result from trains stopped on the tracks blocking access to the subdivision were also significant factors in the denial of rezoning. The depositions of the six members of the police jury who voted against rezoning shows that safety and public welfare concerns were the grounds for their decision and that they conducted a thorough and deliberate consideration of Taylor's applications. In addition, the four members who voted in favor of rezoning indicated in their depositions that there were legitimate reasons for voting against rezoning and that those who voted against rezoning did so in good faith.
Considering this evidence, we find that the defendants met their summary judgment burden of showing an absence of factual support for Taylor's claim that the actions of the police jury in denying his request for rezoning were arbitrary and capricious. We also find that Taylor failed to come forward with factual support sufficient to establish that he will be able to meet his evidentiary burden at trial of proving that the denial of his applications for rezoning bore no substantial relationship to the public health, safety, or general welfare of the municipality and that the denial was arbitrary and capricious.
Taylor's argument that other areas have been zoned with industrial and residential areas together does not raise an issue of fact as to whether the denial in this instance was arbitrary and capricious. Neither the map introduced by Taylor nor the arguments of counsel establish that former instances of zoning bear any relationship to the issues before the police jury on Taylor's applications. Moreover, our review of the applicable ordinances reveals nothing mandating the zoning requested by Taylor.
We also find no merit in Taylor's argument that the denial of his request for *888 rezoning resulted in a compensable taking by the police jury. Though the trial court did not specifically address this claim, the judgment dismissed Taylor's action in its entirety. Where a judgment is silent as to a claim or demand, it is presumed that the court denied the relief sought. Stephenson v. Nations Credit Fin. Services Corp., 98-1689 (La.App. 1st Cir.9/24/99), 754 So.2d 1011, 1023. In this matter, the police jury has neither zoned nor rezoned Taylor's property. No taking has occurred. Taylor requested rezoning, and the request was denied. The denial was neither arbitrary nor capricious. We find no basis for this claim.
As stated, zoning is a legislative function, and zoning decisions are made at the discretion of the legislative authorities. Paternostro v. Parish of Jefferson, 289 So.2d 327 (La.App. 4th Cir.1973), writ refused, 293 So.2d 183 (La.1974). "Whenever the propriety of a zoning decision is debatable, it will be upheld." Palermo Land Co., 561 So.2d at 493. This record establishes that the decision to deny Taylor's request for rezoning was debatable. The record also establishes that considerations of public health, safety, and general welfare could have, and in fact did, justify the denial. It is not within the province of this court to second guess a zoning decision that appears to have been based on appropriate and well-founded concerns for the public. We find no genuine issue of material fact for trial on the issue of whether the denial of rezoning was arbitrary and capricious. Accordingly, the granting of the police jury's motion for summary judgment was appropriate.

Constitutionality of Ordinance 783
Taylor argues that Sections 19:22 and 19:27 of Ordinance 783 are unconstitutional for lack of objective standards which leaves zoning decisions to the unbridled discretion of the members of the police jury. The police jury argues that Taylor's allegations are neither specially pleaded nor particularized as required to challenge the constitutionality of a law. While this claim too was not specifically addressed by the court, it is presumed that dismissal of Taylor's action included denial of this claim as part of the judgment.
A similar challenge was made to a zoning ordinance in Paternostro v. Parish of Jefferson, supra, when the parish council denied the plaintiff's request to rezone a single family residential district to a neighborhood commercial district. The court rejected the challenge stating:
[A] change in a zoning classification is a valid exercise of the legislative function, and legislators have discretion in doing so. It follows that the ordinance under consideration is not vulnerable to a charge of unconstitutionality because of the absence of objective standards or guidelines for the councilmen to follow in passing upon applications for changes in zoning....
Paternostro, 289 So.2d at 333.
We agree with the reasoning of Paternostro. The decision of whether to rezone land is one left to the discretion of the police jury. The relevant ordinances, which we have reviewed, set forth parameters to guide the members of the police jury in such discretionary decision-making. Zoning is not a uniform exercise of power to apply mandatory rules. Rather, zoning is fact-intensive and involves considerations specific to the individual circumstances of each case. We find no merit in this claim.

CONCLUSION
For the reasons expressed in this opinion, we affirm the judgment of the trial court dismissing this action by T.S.C., Inc., *889 and Larry L. Taylor with prejudice. Costs assessed to plaintiffs-appellants.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, PEATROSS, DREW and HARRISON, JJ.
Rehearing denied.
NOTES
[1] Larry Taylor is president of TSC, Inc. These two plaintiffs are referred to collectively in the opinion as "Taylor."
[2] Members of the police jury named as defendants were William Altimus, Jeff Rogers, Henry Mitchell, Jimmy Cochran, Wayne Hammack, and Jerome Darby.